TAYLOR, Appellant and Cross–Appellee,

v.

BROCKER et al., Appellees and Cross–Appellants.*

[Cite as *Taylor v. Brocker* (1996), 111 Ohio App.3d 80.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 94 C.A. 182.

Decided May 14, 1996.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 77 Ohio St.3d 1480, 673 N.E.2d 142.

*A. William Zavarello,* for appellant and cross-appellee.

*Eldon S. Wright* and *Martin J. Boetcher,* for appellees and cross-appellants.

GENE DONOFRIO, Judge.

Plaintiff-appellant and cross-appellee, Harry W. Taylor, appeals a decision of the Mahoning County Court of Common Pleas granting summary judgment in favor of defendants-appellees and cross-appellants, Robert J. Brocker, M.D. and F.A.C.S., and Neurological Diagnostic Clinic, Inc. A cross-appeal was filed by appellees from a separate order of the trial court granting summary judgment in favor of appellant on statute of limitations grounds.

On March 14, 1980, appellant was involved in an automobile accident with Richard Lewis. As a result of the accident, appellant sought medical treatment from Dr. Brocker, who performed three operations on him. These operations were (1) a cervical laminectomy on July 17, 1981, (2) an excision of epidural scar tissue on September 11, 1981, and (3) an anterior cervical fusion on September 21, 1981. Dr. Brocker treated appellant for the final time on August 22, 1983. Appellant was also seen in 1985 by Daniel R. Neogoy, M.D., and was operated on by Dr. Thomas Watson in March 1989.

Prior to this case, appellant brought two separate lawsuits as a result of the accident. The first was a "no fault" insurance claim filed against Nationwide

Insurance Company in Crawford County, Pennsylvania. A settlement was entered into whereby appellant was paid $21,252.78 in exchange for a release. Brocker's medical bill of $14,376.02 was paid out of this settlement. The pertinent part of the release, executed January 12, 1987, is as follows:

"For and In Consideration of the payment of the sum of Twenty One Thousand Two Hundred Fifty–Two Dollars and Seventy–Eight Cents ($21,252.78), and other good and valuable consideration, we, being of lawful age, and by these presents do for ourselves, our heirs, executors, administrators and assigns, release, acquit and forever discharge Nationwide Insurance Company, of and from any and all past, present and future actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, including claims or suits for contribution and/or indemnity of whatever nature, and all consequential damage on account of, or in any way growing out of any and all known and unknown personal injuries, death and/or property damage *resulting or to result from an automobile/garden tractor collision occurring on March 14, 1980 along Pennsylvania Route 77 in Richmond Township, Crawford County, Pennsylvania,* which accident gave rise to the claims underlying the action filed in the Court of Common Pleas of Crawford County at No. A.D. 1982–378, the settlement of which claims was approved by said Court on January ___, 1983." (Emphasis added.)

The second suit was filed against Richard Lewis and others in Crawford County, Pennsylvania, and was ultimately settled for $48,000. As a result of the settlement, appellant executed a "Release of All Claims" in favor of the defendants in that case and the Harleysville Insurance Company. No mention of Dr. Brocker was made. The release, which was executed on September 8, 1983, states as follows:

"For and In Consideration of the payment of the sum of Forty–Eight Thousand Dollars ($48,000.00), and other good and valuable consideration, we, being of lawful age, and by these presents do for ourselves, our heirs, executors, administrators and assigns, release, acquit and forever discharge Richard Wayne Lewis, Helen Bock Lewis, Harleysville Insurance Company, Wendal Snapp, Fred Gilbert and Charlene Dickson, *and any and all persons, firms and corporations, whether herein named or referred to or not,* of and from any and all past, present and future actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, including claims or suits for contribution and/or indemnity of whatever nature, and all consequential damage on account of, or in any way growing out of any and all known and unknown personal injuries, death and/or property damage *resulting or to result from an accident occurring on March 14, 1980 on Route 77 in Richmond Township, Crawford County, Pennsylvania,* said accident being more

fully described in an action filed in the Court of Common Pleas of Crawford County, Pennsylvania, at A.D. No. 1982–198, which action will be marked settled and discontinued as part of the consideration of this release.

" * * *

"We and each of us agree, as further consideration and inducement for this compromise settlement, that *it shall apply to all unknown and unanticipated injuries and damages resulting from said accident, as well as to those now disclosed.* It is agreed that the distribution of the above sum shall be made in accordance with all applicable laws and rules pertaining to such distribution." (Emphasis added.)

This medical malpractice case was initially filed on March 30, 1990 in Summit County, Ohio, as case No. CV 90 031120, against appellees. The Summit County Court of Common Pleas transferred that case to Mahoning County, Ohio, and it became case No. 90 CV 1793. On January 3, 1991, that case was dismissed. Appellant refiled his lawsuit against the appellees in Summit County, Ohio, on January 3, 1992 and it was assigned case No. CV 92 010033. Once again, the Summit County Court of Common Pleas transferred the case to Mahoning County, Ohio by judgment entry dated April 21, 1992. The case was assigned Mahoning County Court of Common Pleas case No. 92 CV 1482.

On December 22, 1992, appellees filed a motion for summary judgment arguing, first, that treatment of appellant was within acceptable standards of medicine and, second, that appellant's cause of action arose on August 22, 1983, the last time appellant saw Brocker and, therefore, the lawsuit was barred by the one-year statute of limitations. In support of his motion, Brocker attached his own affidavit as well as an affidavit of Daniel R. Neogoy, M.D., and Neogoy's medical records and reports of his treatment of appellant beginning April 11, 1985. Appellant's brief in opposition contained an affidavit from James R. Macielak, M.D., stating that Brocker's treatment of appellant deviated from acceptable medical standards.

The trial court overruled appellees' motion for summary judgment on January 19, 1993. Appellees' motion for reconsideration, filed on February 9, 1994, was overruled on March 17, 1994.

This case was set for trial on September 19, 1994. However, prior to trial, the original trial judge became ill and another judge was assigned to the case. On September 2, 1994, appellees filed a second motion for summary judgment, this time arguing that the releases executed by appellant in the Crawford County cases barred his action against appellees in this case. By judgment entry dated October 3, 1994, the newly assigned judge granted appellees' motion for summary judgment. Appellant filed a timely notice of appeal on October 20, 1994.

Appellees filed a cross-appeal of the trial court's order overruling the motion for summary judgment filed on December 22, 1992.

Appellant's sole assignment of error is as follows:

"The trial court erred as a matter of law in granting the defendants' Motion for Summary Judgment based on a general unqualified release."

A review of the trial court's judgment entry granting summary judgment is necessary in resolving this issue. The trial court stated that there were no issues of material fact and that the only issue was whether the defendants were entitled to judgment as a matter of law. Then the trial court stated the issue presented by the parties as follows:

"Is a plaintiff who executes a general release to an original tortfeasor barred from bringing an action against a subsequent treating physician for malpractice which arose from treatment of the injuries caused by the original tortfeasor?"

In finding that appellant was barred from pursuing a medical malpractice action against appellees, the trial court relied on *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, and *Tanner v. Espey* (1934), 128 Ohio St. 82, 190 N.E. 229. A review of these cases, along with the relevant case law in this area, leads us to the conclusion that the trial court was incorrect in the present case. In *Trowbridge, supra,* a repairman, Dlusky, was injured as the result of the negligence of Republic Steel and sought medical treatment from Dr. Trowbridge. Trowbridge performed an operation on Dlusky which rendered him paralyzed. Travelers Indemnity Company settled with Dlusky, then sued Trowbridge, seeking indemnity. The Supreme Court held, in paragraph one of its syllabus, as follows:

"Where the negligence of a tortfeasor in causing bodily injury to a person is a proximate cause of further injury or of aggravation of the original injury, caused by the subsequent independent negligence of a physician in treating the original injury, and the original tortfeasor responds in damages to the injured party for such injuries, the original tortfeasor has a right to indemnity from the treating physician as to that portion of the damages due directly to the independent negligence of the physician."

While *Trowbridge* reviewed the law of successive tortfeasors, the issue there centered on indemnity, with no mention of a release signed by Dlusky. In this appeal, appellant signed a release. Thus, the facts of *Trowbridge* and the rules set out therein are distinguishable from this appeal. Additionally, *Trowbridge* involved indemnity issues, whereas in this appeal the issue centers on contribution. Finally, the Ohio Supreme Court overruled the first paragraph of *Trowbridge, supra,* in *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.* (1995), 73 Ohio

St.3d 391, 653 N.E.2d 235. In that case, the court held, in paragraph one of the syllabus, as follows:

"When a medical provider's negligent treatment of bodily injuries caused by a tortfeasor results in further injury or aggravation of the original injury, R.C. 2307.31 creates a right of contribution between the tortfeasor and the medical provider as to indivisible injuries. (*Travelers Indemn. Co. v. Trowbridge* [1975], 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, paragraph one of the syllabus, overruled.)"

In *Tanner, supra*, 128 Ohio St. 82, 190 N.E. 229, the court stated in paragraph two of its syllabus, as follows:

"If one has suffered personal injuries which thereafter were aggravated by the malpractice of an attending physician or surgeon, and then executes a valid, general and unconditional release to the original tort feasor, in full settlement for all present and future claims and causes of action, such release operates as a bar to an action against such physician or surgeon for such malpractice."

On October 1, 1976, the General Assembly enacted R.C. 2307.32, which provided as follows:

"(F) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or loss to person or property or the same wrongful death, the following apply:

"(1) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater."

The Ohio Supreme Court in *Beck v. Cianchetti* (1982), 1 Ohio St.3d 231, 1 OBR 253, 439 N.E.2d 417, determined that the General Assembly intended to change the common-law rule by enacting R.C. 2307.32. In *Beck, supra*, the Supreme Court stated as follows in paragraph one of its syllabus:

"R.C. 2307.32 requires that a release expressly designated by name or otherwise specifically identify or describe any tortfeasor to be discharged. The phrase 'all other persons' is not sufficient to satisfy this statutory requirement."

Since the releases executed by appellant in the prior cases do not name appellees, appellees were not released pursuant to *Beck, supra*, and R.C. 2307.32. Also, in *Wolke v. McCullough–Hyde Hosp., Inc.* (Nov. 17, 1982), Butler App. No. C.A. 81–10–001, unreported, 1982 WL 3274, the court refused to release a

physician based on the release of the original tortfeasor on the authority of *Beck, supra.*

R.C. 2307.32 and *Beck, supra,* support the fact that appellant did not release Brocker. As a practical matter, appellant could not have released appellees in 1983 when he did not know of the alleged negligence until 1989. Further, the releases specifically stated that they were for injuries resulting from the accident of March 14, 1980, and did not contemplate Brocker's medical negligence.

Appellant's sole assignment of error is with merit.

■ Appellees' cross-appeal raises two assignments of error. The second assignment of error will be treated first. It provides as follows:

"The trial court erred as a matter of law in its judgment entry of March 17, 1994 when it denied the defendants' motion for reconsideration of the defendants' motion for summary judgment filed February 9, 1994 as the defendant[s] established that plaintiff's claims were barred by the one-year statute of limitations contained in Ohio Revised Code Sec. 2305.11."

The trial court ruled in favor of appellant on the summary judgment motion appellees filed regarding the statute of limitations. Appellees' motion for reconsideration asked the court to reconsider this motion.

In *Dunfee v. Midwestern Indemn. Co.* (1990), 70 Ohio App.3d 301, 305, 590 N.E.2d 1365, 1367, the court of appeals stated as follows:

"Dunfee also assigns error to the court's denial of her motion for reconsideration, as filed with the trial court. Mid–America is correct in suggesting that the Civil Rules do not provide for motions for reconsideration in the trial court. See *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105, paragraph one of the syllabus; *Trusso v. Mravec* (May 23, 1990), Medina App. No. 1844, unreported, 1990 WL 72367. Thus, a trial court does not err by denying such a motion without explanation."

The second assignment of error in the cross-appeal is without merit.

■ Appellees' first assignment of error in the cross-appeal states as follows:

"The trial court erred as a matter of law in its judgment entry of January 19, 1993 when it denied the defendants' motion for summary judgment filed December 22, 1992, as plaintiff's claims were barred by the one-year statute of limitations contained in Ohio Revised Code Sec. 2305.11."

R.C. 2305.11 provides as follows:

"(B)(1) Subject to division (B)(2) of this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the action accrued, except that, if prior to the expiration of that one-year

period, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given."

Appellees argue that appellant's cause of action accrued on August 22, 1983 when Brocker last saw appellant and, therefore, appellant had until August 22, 1984 to commence this action. Appellees' motion for summary judgment presented Brocker's affidavit establishing that he did not treat appellant after August 22, 1983. Appellant's motion in opposition included an affidavit from James R. Macielak, M.D., alleging negligence by Brocker, but did not indicate when discovery was made.

■ In a medical malpractice action, Ohio follows the discovery rule which is set out in the syllabus of *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 589 N.E.2d 1284, as follows:

"In a medical malpractice case, the statute of limitations starts to run upon the occurrence of a 'cognizable event.' The occurrence of a 'cognizable event' imposes upon the plaintiff the duty to (1) determine whether the injury suffered is the proximate result of malpractice and (2) ascertain the identity of the tortfeasor or tortfeasors."

Appellees contend that, pursuant to *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93, a patient need not be aware of the full extent of his injuries before there is a cognizable event. Thus, appellees argue that, in presenting evidence that appellant had complaints regarding numbness in his fingers and that it could have been caused by scarring from the operations Brocker performed, appellant should have been placed on notice of a negligence claim.

In opposition to the motion for summary judgment, appellant argues that the cognizable event did not occur until after Watson's surgery in March 1989, making the complaint timely. Appellant relies on *Herr v. Robinson Mem. Hosp.* (1990), 49 Ohio St.3d 6, 550 N.E.2d 159. In that case, Herr sought medical treatment from Dr. Sveda in 1983 for a back problem. Sveda performed a number of operations and assured Herr that it would take time to resolve. The operations did not correct the pain and Herr saw Dr. Pryce on August 22, 1985. At that time, he found that his problems stemmed from a broken vertebrae and that the surgeries Sveda had performed only worsened the problem. The Supreme Court determined that a cognizable event occurred on August 22, 1985. *Id.* at 9, 550 N.E.2d at 162. The court further indicated that the patient could reasonably rely on his physician's assurances.

88

Appellant argues that in this case, there was no cognizable event until after Watson's surgery. Appellant also suggests that Neogoy's treatment of him in 1985 was not a cognizable event since Neogoy informed appellant that his pain was caused by scarring following his back operations. This can occur even if there is no malpractice.

Brocker's contention that the cognizable event occurred after appellant was released from his care or, at the latest, when appellant saw Neogoy in 1985 is misplaced. In *Flowers, supra,* the court stated the purpose of the cognizable event rule as follows:

" * * * To put it plainly, the 'cognizable event' rule was adopted to eliminate the unfairness to medical malpractice plaintiffs, not to favor them and excuse them from the duty to identify the tortfeasor once there is reason to know a tort has been committed." *Flowers, supra,* 63 Ohio St.3d at 550, 589 N.E.2d at 1288.

While appellant was aware that he had pain and numbness in 1985, Neogoy did not relate that to any negligence of Brocker, but merely informed appellant that his pain could have been caused by scar tissue from multiple operations. This was not a cognizable event. Rather, the "cognizable event" occurred in 1989 when Watson informed appellant that Brocker may have been negligent.

Based on *Allenius* and *Flowers, supra,* the cognizable event occurred in 1989 after Watson's surgery and Watson's statements to appellant that Brocker may have been negligent. Thus, the complaint was timely filed.

The first cross-assignment of error of cross-appellants is without merit.

The decision of the trial court is hereby reversed and this cause is remanded for further proceedings according to law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

O'NEILL, P.J., and Cox, J., concurs.