TAYLOR, Appellant and Cross–Appellee,

v.

BROCKER et al., Appellees and Cross–Appellants.

[Cite as *Taylor v. Brocker* (1997), 117 Ohio App.3d 174.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 94 C.A. 182.

Decided Jan. 8, 1997.

*A. William Zavarello*, for appellant and cross–appellee.

*Eldon S. Wright* and *Martin J. Boetcher*, for appellees and cross–appellants.

*Per Curiam.*

This matter has come before the court upon a motion to certify a conflict to the Ohio Supreme Court filed by defendants-appellees/cross-appellants, Robert J. Brocker, Sr., M.D., F.A.C.S., and the Neurological Diagnostic Clinic, Inc. Appellees contend that our decision in this case, styled *Harry W. Taylor v. Robert J. Brocker, Sr., M.D.* (1996), 111 Ohio App.3d 80, 675 N.E.2d 864, conflicts with *Browning v. Tecson, M.D.* (Jan. 23, 1992), Montgomery App. No. 12561, unreported, 1992 WL 15209.

## I

## CERTIFICATION

Certification of a conflict is governed by Section 3(B)(4), Article IV of the Ohio Constitution, which reads as follows:

"Whenever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination."

In construing this constitutional provision, the Ohio Supreme Court stated:

"[W]e hold that (1) pursuant to Section 3(B)(4), Article IV of the Ohio Constitution and S.Ct.Prac.R. III, there must be an actual conflict between appellate judicial districts on a rule of law before certification of a case to the Supreme Court for review and final determination is proper; and (2) when certifying a case as in conflict with the judgment of another court of appeals, either the journal entry or opinion of the court of appeals so certifying must clearly set forth the rule of law upon which the alleged conflict exists." *Whitelock v. Gilbane Bldg. Co.* (1993), 66 Ohio St.3d 594, 595, 599, 613 N.E.2d 1032, 1033, 1035–1036.

Further, there must be an actual conflict between appellate districts on a rule of law, not facts, before certification is proper. And the asserted conflict must be on the same question. *Id.*

App.R. 25 controls the procedure for requesting that a court of appeals certify a conflict. This rule reads in part as follows:

"(A) * * * The filing of a motion to certify a conflict does not extend the time for filing a notice of appeal. A motion under this rule shall specify the issue proposed for certification and shall cite the judgment or judgments alleged to be in conflict with the judgment of the court in which the motion is filed.

"(B) Parties opposing the motion must answer in writing within ten days after the filing of the motion. * * * Oral argument of a motion to certify a conflict shall not be permitted except at the request of the court."

In this case, our decision was announced on May 14, 1996. Thereafter, appellees filed their motion to certify a conflict on May 17, 1996, and appellant filed a brief in response on June 4, 1996. In their motion to certify a conflict, appellees have alleged that our decision in this case is in conflict with the Second District Court of Appeals case of *Browning v. Tecson, supra.*

In *Browning,* the court of appeals determined that a patient need not have her suspicions confirmed by a subsequent examining doctor before a cognizable event occurs. *Id.* at 2. Appellees argue, then, that *Browning* conflicts with the case at bar, since in this case we held that the cognizable event occurred in 1989 after Dr. Watson's surgery when appellant was informed that Dr. Brocker may have been negligent.

Appellees have set forth three issues which they contend require certification to the Ohio Supreme Court:

"1. In a medical malpractice action, does a patient who claims that a previously treating physician was negligent need to be told by a subsequent treating or examining physician that the previously treating physician was negligent before a 'cognizable event' occurs? In other words, does a patient need to have his or her suspicions confirmed by a subsequent treating or examining physician before a 'cognizable event' occurs?

"2. Does a 'cognizable event' occur when there are facts and circumstances which lead, or should lead the patient to believe that the physical condition or injury of which he complains is related to the medical diagnosis, treatment or procedure which the patient previously received and which places or should place the patient on notice of the need to pursue his or her possible remedies?

"3. Must the patient be aware of the full extent of the injury before there is a 'cognizable event' or is constructive knowledge of facts, rather than actual knowledge of their legal significance, enough to start the statute of limitations running under the discovery rule?"

## II

## THE CASE AT BAR

On March 14, 1980, appellant was injured in an automobile accident with Richard Lewis. Appellant was treated for his injuries by Dr. Brocker. As a result of the accident, appellant brought two lawsuits. In the first case, appellant sued Nationwide Insurance Company in Crawford County, Pennsylvania. That

case was ultimately settled, and appellant executed a release in favor of Nationwide Insurance Company. Dr. Brocker's medical bill of $14,376.02 was paid out of the settlement proceeds.

The second suit was filed against Richard Lewis and others in Crawford County, Pennsylvania, and likewise was settled. Appellant executed a release of all claims in favor of all defendants and the Harleysville Insurance Company. No mention of Dr. Brocker was made in either release.

The case at bar is a medical malpractice claim brought by appellant against Dr. Brocker and the Neurological Diagnostic Clinic, Inc. for negligence in medical treatment rendered for injuries suffered in the March 14, 1980 accident. In the trial court, Dr. Brocker argued that the release executed by appellant in the two cases described above barred this medical malpractice action. The trial court agreed and granted summary judgment in favor of appellees. We reversed, finding that the release executed by appellant in the two prior cases did not release Dr. Brocker. We further found that the cognizable event occurred in March 1989, after Dr. Watson's surgery. At that time, Dr. Watson informed appellant that Dr. Brocker may have been negligent. Accordingly, the decision of the trial court was reversed, and the cause was remanded.

## III

## NO CONFLICT

To meet their burden that there be an actual conflict between appellate districts pursuant to Article IV, Section 3(B)(4) of the Ohio Constitution, appellees argue that the decision of *Browning, supra,* is in conflict with this case. However, a review of the *Browning* opinion shows that the rule of law applied in that case as well as in the case at bar is the same, and thus the decisions are not in conflict.

In *Browning,* the court was faced with a case where Browning viewed a television program six and a half years after she had surgery and related the contents of the television program to the physical problems from which she was suffering. The *Browning* court determined that after viewing the television program, Browning was cognizant of the fact that her doctor, Dr. Burt, possibly performed improper surgery in 1982. The defendant in that case, Dr. Tecson, was an anesthesiologist assisting the surgery performed by Dr. Burt. In rejecting her argument that the cognizable event occurred on April 13, 1989, the date on which she was examined by Dr. Richard Salzer, who confirmed her suspicions, the court found that pursuant to the test set out in *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93, Browning was not required to have her suspicions confirmed before a cognizable event occurred. Thus, the

court determined that the cognizable event occurred on October 30, 1988 when Browning viewed the television program.

Of particular importance to the *Browning* court was an affidavit filed by Browning that stated that she saw the television program on October 30, 1988 and realized that she had the same symptoms as Dr. Burt's patients. She consulted with an attorney regarding a potential medical malpractice claim and was told she had no claim. She then consulted with another attorney, who referred her to Dr. Salzer for an examination.

In the case at bar, we found that appellant was put on notice that Dr. Brocker may have been negligent only after Dr. Watson performed surgery and informed him as to the potential problems in March 1989. True, appellant sought medical treatment with Dr. Richard Neagoy in 1985, but he was informed by Neagoy only that his pain may have been due to scaring from multiple operations. There was no evidence of appellant's having any suspicion at that time that would have put him on notice that Dr. Brocker may have been negligent.

Likewise, appellant's consultation with Dr. Watson on March 3, 1989, prior to the surgery, was not a cognizable event. Dr. Brocker argues that after Dr. Watson examined appellant on March 3, 1989, he informed appellant of the "whole situation." Dr. Brocker concludes then that even if appellant's cause of action did not accrue until Dr. Watson became involved, the cause was still time-barred because the cognizable event occurred on March 3, 1989.

There is no evidence that after the March 3, 1989 consultation with Dr. Watson appellant had suspicions that Dr. Brocker was negligent, as in *Browning*. It was only after the surgery when Dr. Watson informed appellant that Dr. Brocker may have been negligent that appellant suspected negligence by Dr. Brocker.

*Browning*, cited by appellees, is not in conflict with the case at bar on a rule of law. Rather, it is factually different. Factual distinctions are not a basis for certification. *Whitelock, supra.* Since appellant was put on notice only after Dr. Watson's surgery that Dr. Brocker may have been negligent, the cognizable event occurred at that time. Aside from the factual distinctions between the two cases, application of the rule of law in both *Browning* and this case is the same.

The motion to certify a conflict is overruled.

*Motion overruled.*

Joseph E. O'Neill, Gene Donofrio and Cox, JJ., concur.