FABRIZIO, a Minor, et al., Appellees,

v.

HENDRICKS, et al., Appellants.

[Cite as *Fabrizio v. Hendricks* (1995), 100 Ohio App.3d 352.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 93–T–4995.

Decided Jan. 3, 1995.

*Martin S. Golberg,* for appellees.

*John T. McLandrich,* for appellants.

*Richards & Meola* and *Charles L. Richards,* guardian *ad litem.*

EDWARD J. MAHONEY, Judge.

This appeal arises out of the Probate Division of the Trumbull Court of Common Pleas, where the appellant, a defendant and counterclaimant in appellees' declaratory judgment action, seeks to reverse the trial court's grant of declaratory relief in favor of the appellees and the denial of its counterclaim for $250,000 for attorney fees and expenses incurred in the defense of a third-party complaint filed by St. Joseph Riverside Hospital.[1] Appellant sought the attorney fees and expenses from a trust established for the benefit of appellee, Theresa Fabrizio, a minor child. For the reasons that follow, the decision of the trial court is affirmed.

Because of the prolonged and complicated nature of this litigation, a summary of the events leading to and occurring during this case is helpful to arrive at a proper resolution of the issues.

Appellee Linda Fabrizio, mother of the appellee minor child, was treated at the emergency room of St. Joseph Riverside Hospital on November 26, 1983 by appellant Dr. L.D. Hendricks. Dr. Hendricks prescribed a ten-day supply of an

---

1. The third-party complaint arose from Trumbull C.P. No. 86 CV 951, which was settled on July 16, 1991 and subsequently dismissed. Further, during the course of these proceedings, the trial court appointed a guardian *ad litem* to act on behalf of the minor child's best interest. We note the trial court's recognition of the guardian's concerns and recommendations. The guardian *ad litem* rightfully notes that the guardianship is not a party to the instant action.

antibiotic, tetracycline. On August 10, 1984, Linda Fabrizio gave birth to Theresa, who had congenital birth defects. Subsequently, in 1986, both Linda Fabrizio and her husband, Randy A. Fabrizio, filed a medical malpractice claim against several defendants, including the appellants in this action. The alleged malpractice was in failing to inquire of Linda as to pregnancy or attempts to get pregnant and/or warning her about the possible effects of the drug on the fetus.

In 1988, the appellees agreed to accept $250,000 in exchange for the execution of a "covenant not to sue." The covenant, at issue in this case, contains a provision that required the appellees to indemnify either Dr. Hendricks or his business entity in subsequent litigation. The attorneys agreed that the execution of the "covenant not to sue" was precipitated by the perceived imminent bankruptcy or receivership of appellants' primary insurance carrier. This never occurred. The covenant was executed by Mr. Fabrizio in his individual capacity and as friend of his minor daughter, Theresa. Linda Fabrizio was also a signatory to this covenant in her individual capacity. Theresa Fabrizio's guardianship was not a party to this covenant.

Once the covenant was signed, an application to settle the claim against the instant appellants alone was submitted to the probate court and a guardian for Theresa was appointed. Later, appellees filed a second amended complaint against St. Joseph Riverside Hospital, having expressly reserved the right to do so in the covenant with appellants. The complaint contained two counts of negligence grounded upon the hospital's own conduct, and a third claim against the hospital based on a theory of vicarious liability for Dr. Hendricks's actions. The hospital answered this amended complaint and filed a third-party complaint against the appellants, seeking indemnification.

This matter went to arbitration and the panel found there was no negligence on the hospital for its own conduct, but that the hospital was liable for Dr. Hendricks's negligence. The panel set damages for the plaintiffs in the sum of $2.5 million. All parties appealed the arbitration.

In 1989, the Fabrizios filed the instant action, a declaratory relief case, seeking a construction of the covenant executed in 1988. Appellants answered and filed a counterclaim against the Fabrizios for money for the expenses related to the defense of the hospital's third-party complaint from the original malpractice case. At the time of the filing of the counterclaim, the attorney fees were in excess of $19,400. Now the appellants seek, by indemnity, attorney fees of $250,000, which is the amount that was paid to the Fabrizios for the original covenant. In their brief on the merits, appellants also seek to recover an additional $175,000 that was later paid to the Fabrizios in settlement of the original claim with the

hospital in 1991.[2]

Following the execution of the release that resolved the original medical malpractice action, the probate referee issued his report in the instant action. Appellants filed a motion objecting to the referee's report and a supplemental motion for reimbursement. The court granted a hearing on appellants' motions.

Subsequently, the probate court issued its judgment, which is the subject of this appeal. The court determined that the obligations on the Fabrizios contained in the covenant of 1988 were extinguished by the release executed in July 1991. Further, the court found no right to reimbursement of litigation expenses from the assets of the minor child's guardianship and no duty, obligation, or debt owed by the guardianship to any of the parties to the action. Dr. Hendricks and the business entity appeal that ruling, asserting one assignment of error:

"Whether the trial court erred in failing to enforce the indemnity provisions of the covenant not to sue."

In their sole assignment of error, the appellants assert that the 1988 covenant not to sue is clear and unambiguous and provides for the appellees to indemnify them for the costs and expenses and attorney fees for the defense of the third-party claim asserted in the original action. In their reply brief, appellants stated that they were not asserting any claim for the additional $75,000 paid in the 1991 settlement clarifying their original demand for said funds as was set forth in appellants' original brief. Therefore, the question before this court is whether the release of 1991 extinguished the indemnity obligations for attorney fees found in the 1988 covenant not to sue.

The 1988 covenant not to sue provides in pertinent part:

"The promisors [the Fabrizios] agree to indemnify * * * all of the Promisees * * * from any type of loss, claim, liability, cost, and expense, including, but not limited to, attorney fees, * * * as a result of any claim asserted against the Promisees * * * by St. Joseph Riverside Hospital * * * such indemnification * * * is limited to the total amount of the settlement, *i.e.*, Two Hundred Fifty Thousand and no/100 Dollars * * *."

The appellants state that this covenant or contract is clear and unambiguous and should be enforced. Further, appellants also rightfully acknowledge that

---

**2.** During the resolution of the declaratory judgment action, the original medical malpractice case went to trial. At issue was appellees' amended complaint and the hospital's third-party complaint. After the trial commenced, a settlement between the parties was reached. The settlement required the appellants to pay $75,000 and the hospital to pay $100,000. In June 1991, the probate court approved the settlement, and on July 16, 1991, the appellees executed a release discharging the appellants and the hospital.

such covenants are authorized under R.C. 2307.32 and should be enforced according to the terms of the agreement.

Appellees argue that the indemnity was for loss and not for suit. They believe the indemnity is triggered only in the event that a judgment is rendered against appellants which they paid. The parties agreed that since the 1991 release, no effort has been made by the hospital to obtain any indemnity or contribution from Dr. Hendricks or the Fischer Mangold Group.

In 1991, the original medical malpractice claim proceeded to trial, which included the claims found in the second amended complaint as well as the hospital's third-party claim. The protracted, many-sided litigation brought convoluted problems, exposures and risks to all the parties. A settlement was negotiated and a release was signed by the Fabrizios, which paid the family an additional $75,000 from appellants and $100,000 from the hospital.

The 1991 release contained in pertinent parts:

" * * * THAT WE [Fabrizios] * * * have released and discharged * * * the said EMERGENCY ROOM DOCTORS, ST. JOSEPH RIVERSIDE HOSPITAL, and their respective * * * insurers, indemnitors, indemnitees, * * * of and from any and all claims * * *.

" * * * AND WE [Fabrizios] * * * further covenant and agree * * * to indemnify and hold harmless the said EMERGENCY ROOM DOCTORS, ST. JOSEPH RIVERSIDE HOSPITAL * * * against all *loss or expense* of any kind or nature and against all further claims * * * for any injuries or damages sustained by the said THERESA FABRIZIO, a minor, now known or unknown * * *.

" * * * IT IS FURTHER UNDERSTOOD AND AGREED that we hereby acknowledge the foregoing amount, *together with the amount received by prior settlement* with the said EMERGENCY ROOM DOCTORS, to be payment in full for all injuries received or damages incurred * * *.

" * * * [T]he above settlement shall include all claims for damages in * * * Case No. 86 CV 951, and * * * this case shall be marked: 'CASE SETTLED AND DISMISSED WITH PREJUDICE * * *.' " (Emphasis added.)

A release may be defined as the giving up or abandoning of a claim or right to the person against whom the claim exists or against whom the right is to be enforced or exercised. Stated in basic terms, it is a contract, as is the covenant not to sue. If there is any doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it. *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 80, 40 O.O.2d 87, 89, 228 N.E.2d 304, 307.

The release prepared by the appellants was to provide for a settlement of all legal claims that existed between the parties. It is presumed that it was to benefit all wrongdoers. *Whitt v. Hutchison* (1975), 43 Ohio St.2d 53, 72 O.O.2d 30, 330 N.E.2d 678, paragraph one of the syllabus. Curiously, the terms of the release signed in 1991 discharge the appellants, the hospital, and their respective *indemnitors and indemnitees*. The 1988 covenant not to sue declared that the Fabrizios were indemnitors. This release was executed unilaterally, not mutually. We have difficulty envisioning the Fabrizios releasing themselves. Nevertheless, this ambiguity might be construed against the drafters (appellants) as an inference that they intended the release to end all litigation between the parties.

The release makes reference to the *amount received under the covenant* not to sue and the additional amount as being *payment* in full. The release provides for dismissal with prejudice of all claims of *all parties* arising out of *Lehner v. Fugere,* case No. 86 CV 951, 1987 WL 6222 (1987). The release contains a new indemnity and hold-harmless covenant by the Fabrizios to both the emergency room doctors and the hospital. Unlike the covenant, the release did not reserve any rights to anyone against anyone else.

It is difficult to believe that this release was executed in a vacuum in which the parties were oblivious to the fact that they were then still involved in this particular declaratory judgment action. It is conspicuous by the lack of any reference to it. We cannot speculate on the significance of its absence.

Looking at the release from all four of its corners, we hold that the covenant not to sue was subsumed within the release. It was extinguished by the release.

By so holding, we do not reach the issues of whether the covenant's indemnity was one of loss or suit, nor whether the attorney fees and expenses were reasonable and necessary.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

NADER, P.J., and CACIOPPO, J., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.