NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0178n.06
Filed: March 6, 2007

No. 06-3553

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GARY D. AHO,

     Plaintiff-Appellant,

v.

CLEVELAND-CLIFFS, INC.,

     Defendant-Appellee.

                         /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

BEFORE:    NORRIS, COLE, and CLAY, Circuit Judges.

     **CLAY, Circuit Judge.**  Plaintiff Gary D. Aho appeals the district court's grant of judgment

on the pleadings for Defendant Cleveland-Cliffs, Inc., dismissing Plaintiff's motion for a declaratory

judgment that Plaintiff retained the right to exercise his vested stock options after entering into a

release agreement with Defendant.  For the reasons that follow, we **AFFIRM** the order of the district

court dismissing Plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(c).

**BACKGROUND**

     Plaintiff is a former long-term manager for Defendant, a corporation primarily engaged in

the production of iron ore pellets.  Plaintiff was in Defendant's employ for thirty-four years, during

which time he participated in the 1992 Incentive Equity Plan ("the IEP").  The IEP was a stock-

options program that granted Plaintiff shares of Defendant's stock in lieu of annual incentive bonuses and salary increases. Pursuant to the terms of the IEP, between 1996 and 2000, Plaintiff received options to acquire 4,550 shares of Defendant's stock. Before the options could vest, Plaintiff was required to remain employed by Defendant for at least three years after the options were granted. Thus, the options began vesting yearly beginning in January 2000, with the last of the options vesting on January 11, 2003. Plaintiff never attempted to exercise any of these options during his employment.

On July 24, 2003, Defendant notified Plaintiff that it had implemented an employee reduction program, which eliminated the positions of many employees, including Plaintiff's. Plaintiff's position was scheduled to terminate on September 30, 2003. Defendant informed Plaintiff that, instead of being terminated, he was eligible to take early retirement because of his age and years of service. Thus, on November 5, 2003, Plaintiff and Defendant entered into a Separation Agreement and Release of Claims ("the Agreement"), that outlined the terms of Plaintiff's retirement benefits and settlement. Specifically, the Agreement stated that, in addition to all salary and pension benefits earned by Plaintiff as of September 2003, Defendant agreed to the following terms:

> "1) Defendant would pay an additional $106,116 into a Special Cash Balance Account for the Plaintiff; 2) Defendant would continue to pay Plaintiff's health insurance premiums for a year following the date of severance; 3) Defendant would increase Plaintiff's pension benefits; 4) Defendant would increase the long-term medical benefits available to the Plaintiff; and 5) Defendant would provide Plaintiff with up to $9,000 in outplacement services."

(J.A. at 35-36). In return, Plaintiff signed a waiver, which appeared in Section H of the Agreement. It read:

Employee hearby forever gives up, waives and releases any right to recall or reinstatement by Employer, and Employee does hearby for himself/herself and for his/her heirs, executors, successors, and assigns, release and forever discharge Employer, as well as each of its past and present successors, assigns, divisions, parents, subsidiaries, related or affiliated companies, and the officers, directors, shareholders, members, employees, heirs, agents, and attorneys of each of the forgoing, including without limitation any and all management and supervisory employees, and all persons acting under or in concert with any of them (hereinafter collectively termed the "Released Parties") of and from any and all debts, claims, demands, charges, complaints, grievances, promises, actions, or causes of actions, suits at law or equity, and/or damages of any and every kind that Employee has or may have, whether known or unknown, including but not limited to, any and all claims and/or demands for back pay, reinstatement, hire or re-hire, front pay, ***stock options***, group insurance or employee benefits of whatsoever kind (except on rights expressly provided for herein), claims for monies and/or expenses, any claims arising out of or relating to the cessation of Employee's employment with Employer, any claims for breach of contract or Employee's failure to obtain employment with any other person or employer, claims for discrimination on any basis arising under any federal, state, or local statute, ordinance, or law, and any and all claims for wrongful termination of employment, misrepresentation, harassment, mental anguish, emotional distress, breach of contract, breach of implied contract, promissory estoppel, defamation, violation of public policy, attorneys' fees and costs of any legal proceeding, if any, and any and all other claims or causes of action, however denominated, that Employee has or may have by reason of any matter or thing arising out of, or in any way connected with, directly or indirectly, any act and/or omission that has occurred prior to the Effective Date of this Agreement. Employee understands that Employer denies or will deny any and all claims and liability which may be asserted by Employee under any of the foregoing and under the laws and regulations described in Paragraph K below.

This release does not apply to Employee's entitlements under this Agreement, the Pension Plan, the Retiree Medical Plan, the Cliffs and Associated Employers Salaried Employees Supplemental Retirement Savings Plan (the "Savings Plan"), the Ore Mining Companies Retirement Income Plan, and the Employer's vacation policy.

(J.A. at 36). (emphasis added). Also relevant is Section J of the Agreement, which was a covenant not to sue. It reads:

> Employee covenants and agrees that Employee will not bring . . . any action or proceeding or otherwise prosecute or sue Employer . . . with respect to the claims herein released.

(J.A. at 43).

On December 11, 2003, after he had already signed the Agreement, Plaintiff attempted for the first time to exercise his previously vested stock options by purchasing shares of Defendant's stock. Plaintiff was informed that he had forfeited those stock options when he signed the Agreement. Plaintiff contended that his vested stock options were excluded from Section H of the Agreement ("the release clause"). Plaintiff filed a complaint on April 13, 2005, requesting the district court to issue a declaratory judgment holding that it was not the intent of the parties for Plaintiff to forfeit vested stock options he received under the IEP. Defendant moved for judgment on the pleadings on June 13, 2005, pursuant to Federal Rule of Civil Procedure 12(c), arguing that Plaintiff released his claims to the stock options when he signed the Agreement and, additionally, that Plaintiff is barred from litigating his claim because Section J of the Agreement, the covenant not to sue, barred this action.

The district court analyzed Defendant's arguments together because the interpretation of the covenant not to sue depends upon the interpretation of the release clause inasmuch as the covenant not to sue bars only claims pertaining to rights that had been released. The district court began by examining the language of the Agreement. Defendant focused on the fact that the release clause explicitly listed "stock options" as one of the items that Plaintiff released as a term of the Agreement. Plaintiff contended that the release clause had to be read in conjunction with the contract as a whole and argued that a paragraph of the Agreement's prefatory language excluded the vested stock options

4

from the release clause. The language to which Plaintiff refers is found in paragraph four of the prefatory language of the Agreement and reads:

> WHEREAS, Employee has been paid or will be paid all wages, *incentives* and *benefits* owed to Employee in consideration of and as compensation for Employee's services as an employee but that the Employer desires to provide additional benefits to the Employee. . . .

(J.A. at 41). (emphasis added). Plaintiff argued that because the stock options were given in lieu of incentive bonuses and salary increases, they were excluded from the terms of the Agreement by this prefatory language ("the whereas clause"). The district court was unpersuaded. It held that, at best, the whereas clause could be read as vaguely referring to the stock options and excluding them from the release clause; however, the plain language of the Agreement expressly named rights to stock options as one of the rights being relinquished, and thus, such an express reference trumped the vague language of the whereas clause. The court likewise held that because the stock options were not exempted from the Agreement, the covenant not to sue applied to claims relating to the stock options. Thus, the court concluded that Plaintiff's claim was barred. On these grounds, the district court granted Defendant's motion for judgment on the pleadings and Plaintiff timely filed notice of appeal.

## DISCUSSION

I. **The district court properly held that Plaintiff relinquished his rights to his stock options when he entered into the Agreement**

A. **Standard of Review**

This Court reviews a district court's grant of a motion for judgment on the pleadings *de novo*. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). A motion for judgment on

the pleadings is proper where it is made, as it was in this case, "after the pleadings are closed, but within such time as to not delay the trial." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, we "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)).

**B.      Analysis**

According to Ohio law, "[s]tated in basic terms, [a release] is a contract, as is the covenant not to sue." *Fabrizio v. Hendricks*, 654 N.E.2d 127, 129 (Ohio Ct. App. 1995). There are two principles of contract interpretation that are important to our analysis. Ohio courts have held that prefatory language, like the whereas clause, cannot alone create contractual obligations. *See Illinois Controls, Inc. v. Langham*, 1992 Ohio App. LEXIS 4748 (Ohio Ct. App. 1992), *rev'd on other grounds*, 639 N.E.2d 1112 (Ohio 1994) (unpublished); *Cleveland Trust Co. v. Snyder*, 380 N.E.2d 354, 359 (Ohio Ct. App. 1978). It is, however, an equally well-settled tenet of Ohio law that when "construing a contract, a court not only must give meaning to every paragraph, clause, phrase and word, omitting nothing as meaningless, or surplusage; it must consider the subject matter, nature, and purpose of the agreement." *Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp.*, 16 F.3d 684, 686 (6th Cir. 1994) (internal citations omitted). Thus we are confronted with two conflicting canons of contract interpretation. We must consider the contract in its entirety, "omitting nothing as meaningless," which would include the whereas clause; but that clause cannot be viewed as

creating a provision of the contract. *See id*; *see also* Cleveland *Trust*, 380 N.E.2d at 359. Examining the relevant case law is of limited assistance. Although both *Illinois Controls* and *Cleveland Trust* state that contract provisions cannot be determined by the prefatory language of the contract, neither case contains analysis of this issue and, thus, neither case offers much guidance as to what this means *vis-a-vis* the general rule that every aspect of a contract must be considered. Accordingly, our initial task is to reconcile these principles.

While prefatory language cannot, in and of itself, create binding contract obligations, it cannot be entirely discounted in contract interpretation as Defendant contends it should be. In fact, the role of prefatory language is to define the scope of a contract, and that is how it has been analyzed by the Ohio courts. *See, e.g., Pasco v. State Auto. Mut. Ins. Co.*, 1999 Ohio App. LEXIS 6492, *12-13 (Ohio Ct. App. 1999) (unpublished) (concluding that the trial court properly considered the prefatory language of a contract in determining whether a specific provision of a contract was applicable to that case). This is the most logical way to understand the role of prefatory language in Ohio contract interpretation because it is consistent with both the rule that no element of a contract may be disregarded and the rule that prefatory language alone cannot create contractual obligations. Thus, we will consider the pertinent whereas clause insofar as it is relevant to determining whether the Agreement was applicable to Plaintiff's stock options.

In the present case, the prefatory language excludes from the release clause all "incentives and benefits" paid to Plaintiff and that will be paid to Plaintiff. Therefore, this language instructs us that if Plaintiff's vested stock options are considered "incentives" or "benefits," then the

Agreement does not apply to them. *See Pasco*, 1999 Ohio App. LEXIS 6492, *12-13. Thus, we will now turn to defining those terms.

"In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties." *Aultman Hosp. Ass'n. v. Cmty. Mut. Ins. Co.*, 544 N.E.2d 920, 923 (1989). Defendant correctly observes that it is well-settled that "where two interpretations can be given to a term in a contract, one will make a provision meaningless, and one which will give full force to all provisions, the latter must be adopted." *Lightning Rod Mut. Ins. Co. v. Midwestern Indem. Co.*, 1987 Ohio App. LEXIS 6198, *7 (Ohio Ct. App. 1987). Plaintiff, however, also correctly points out that this Court must "construe any ambiguity strictly against the drafter of the contract." *Molnar v. Castle Bail Bonds, Inc*., 2005 Ohio 6643, *43 (Ohio Ct. App. 2005). In *Molnar*, the court expressly clarified that interpreting terms to give full force to all provisions trumps the other canons of interpretation. *Id*. Thus, we must first try to ascertain the intent of the parties by affording full meaning to the entire contract. *Id*. Only if that is impossible will we attempt to construe the ambiguous terms in a way that provides deference to the non-drafting party.

Plaintiff argues that the terms "incentives" and "benefits" refer to his vested stock options. As Plaintiff argues, the stock options were issued in lieu of incentive bonuses and annual salary increases. Thus, they meet a common sense definition of "incentive" or "benefit." Further, the fact that the stock options were referred to as "incentive stock options" in Defendant's Stock Option Award Statement weighs in favor of Plaintiff's interpretation. However, the plain language of the Agreement weighs more strongly in Defendant's favor. First, the language clearly states that Plaintiff "forever gives up, waives and releases any right . . . to, any and all claims and/or demands

for . . . stock options . . . of whatsoever kind." (J.A. at 36). Thus, understanding the term "incentive" to apply to Plaintiff's stock options would render this section meaningless. Because Plaintiff concedes that he had no right to his unvested stock options, the only rights he could have possibly been signing away were those to his vested stock options. Indeed, if both the unvested stock options and the vested stock options fell beyond the reach of the Agreement, there is no explanation why the release clause would specifically refer to stock options, and that provision would be rendered meaningless.

Defendant's argument is further strengthened by the fact that the Agreement contains a provision that explicitly exempts several benefits plans from the release clause. This section makes the Agreement inapplicable to Plaintiff's entitlements under the Pension Plan, the Retiree Medical Plan, the Cliffs and Associated Employers Salaried Employees Supplemental Retirement Savings Plan, the Ore Mining Companies Retirement Income Plan, Plaintiff's vacation policy, and the Agreement itself. (J.A. at 36). Noticeably absent from this list is the IEP. According to the doctrine of *expressio unius est exclusio alterius* [the expression of one thing is the exclusion of another], which Ohio employs, this absence strongly evidences the parties' intention to make the Agreement applicable to the IEP. *See Third Nat'l Bank v. Laidlaw*, 86 Ohio St. 91, 102 (Ohio 1912). The fact that the parties chose not to explicitly exempt the IEP from the Agreement convinces us that the parties intended to make the Agreement applicable to Plaintiff's rights to his vested stock options.

**II.  The district court properly held that the covenant not to sue applied to claims related to Plaintiff's rights in his vested stock options**

**A.  Standard of Review**

As discussed above, we review a district court's grant of a motion for judgment on the pleadings *de novo*. *See supra* Part I.A.

**B.     Analysis**

This Court, while interpreting Ohio law, has repeatedly enforced covenants not to sue. In *Astor v. International Business Machines Corporation*., 7 F.3d 533, 540 (6th Cir. 1993), we were faced with a case similar to the present one, where the plaintiff challenged the validity of the covenant because it argued such covenants did not apply to the right to sue over the covenant itself. We quickly dismissed that argument and adopted the Second Circuit rule that "[i]t is not beyond the powers of a lawyer to draw a covenant not to sue in such terms as to make clear that any breach will entail liability for damages, including the most certain of all–defendant's litigation expense." *Id*. (quoting *Artvale, Inc. v. Rugby Fabrics Corp*., 363 F.2d 1002, 1008 (2d Cir. 1966)). The only caveat was that the language must be unambiguous. *Id*.

In the present case, the language of the covenant not to sue is unambiguous. It states: "Employee covenants and agrees that Employee will not bring . . . any action or proceeding or otherwise prosecute or sue Employer . . . with respect to the claims herein released." (J.A. at 43). Plaintiff does not argue otherwise. Accordingly, if the covenant not to sue applies to Plaintiff's claims, it is enforceable. Plaintiff argues that because the Agreement does not apply to his vested stock options, the covenant not to sue is unenforceable because it does not apply to his claim. Essentially, this envelopes the previous argument Plaintiff made. Thus, because we find that the Agreement does in fact apply to Plaintiff's vested stock options, we likewise find that this claim is barred by the covenant not to sue.

## CONCLUSION

For the forgoing reasons, we **AFFIRM** the order of the district court dismissing Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(c).