[Cite as *Richland Auto Group, Inc. v. Fifth Third Bank*, 2012-Ohio-3060.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| RICHLAND AUTO GROUP, INC. | : | W. Scott Gwin, P.J. |
| | : | John W. Wise, J. |
| Plaintiff-Appellant | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 11CA77 |
| | : | |
| | : | |
| | : | |
| FIFTH THIRD BANK | : | O P I N I O N |
| | | |
| Defendant-Appellee | | |

CHARACTER OF PROCEEDING:        Civil Appeal from Richland County
Court of Common Pleas Case No.
11CV0059

JUDGMENT:        Affirmed

DATE OF JUDGMENT ENTRY:        June 29, 2012

APPEARANCES:

For Plaintiff-Appellant                     For Defendant-Appellee

TODD H. NEUMAN                          ALAN J. STATMAN, ESQ.
NICHOLAS R. BARNES                    BRIAN GILES, ESQ.
Allen Kuehnle Stovall & Neuman LLP      Statman, Harris & Eyrich, LLC
17 South High Street, Suite 1220          3700 Carew Tower
Columbus, Ohio 43215                    441 Vine Street
                                       Cincinnati, Ohio 45202

*Edwards, J.*

**{¶1}** Plaintiff-appellant, Richland Auto Group, Inc., appeals from the August 5, 2011, Order of the Richland County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Fifth Third Bank.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶2}** Appellant Richland Auto Group operates a car dealership in Richland County, Ohio. Prior to February of 2008, appellant and appellee Fifth Third Bank had an ongoing business relationship. In accordance with this relationship, appellee provided various business loans and financing to appellant. One of these loans was an approximately $8,000,000 variable interest rate loan.

**{¶3}** In February of 2008, appellee approached appellant and proposed that appellant enter into an interest rate SWAP Agreement. Under the terms of this agreement, the interest rate on $4,000,000.00 of the $8,000,000.00 loan would be converted from a variable interest rate to a fixed interest rate. After Dirk Schluter, appellant's President, orally agreed to enter into the proposed SWAP Agreement, appellee sent appellant a Confirmation Letter dated February 7, 2008 that allegedly memorialized the terms and conditions of the proposed SWAP Agreement. Schluter, however, refused to sign the letter as requested by appellee because he believed that the terms of the letter were inconsistent with the parties' agreement. Schluter specifically took issue with terms that provided for fees and costs, including a termination fee. The oral SWAP Agreement was never reduced to a written agreement.

**{¶4}** After, due to the economic crisis, appellant was unable to obtain other financing, appellant accepted the benefits under the SWAP Agreement and continued

paying the charges received from appellee relating to the SWAP Agreement, including the variable interest and other charges. Appellant contends that it paid $200,000.00 in improper interest under the SWAP Agreement.

{¶5} On May 25, 2010, appellant, as one of the "Borrowers," and appellee, as "Lender," entered into a Loan Assumption and Modification Agreement. The agreement stated, in Section 9, as follows:

{¶6} "Section 9. Release of Claims. The Borrowers and the Additional Borrower represent and warrant that they are not aware of, and possess no, claims or causes of action against Lender. Notwithstanding this representation, and as further consideration for the agreements and understandings herein, the Borrowers and the Additional Borrower, in every capacity, including without limitation, shareholders, officers, partners, members, directors, investors or creditors, or anyone or more of such, and each of their employees, agents, executors, successors and assigns, hereby release Lender and its officers, director; employees, agents, attorneys, affiliates, subsidiaries, successors and assigns from any liability, claim, right or cause of action which now exists, or hereafter arises, whether known or unknown, arising from or in any way related to the facts in existence as of the date hereof."

{¶7} The "Additional Borrower" referred to in the agreement was Whitey's Nissan, Inc.

{¶8} Thereafter, in November of 2010, appellant terminated the SWAP Agreement and paid off its loan obligations to appellee, including the fees related to the SWAP Agreement. These fees included a SWAP Agreement termination fee of $40,000.00.

{¶9}    Subsequently, on January 11, 2011, appellant filed a complaint against appellee.  Appellant, in its complaint, alleged that there was no meeting of the minds between appellant and appellee regarding the material terms of the SWAP Agreement and that appellee had been unjustly enriched by requiring appellant to pay appellee variable interest and other charges related to the SWAP Agreement. Appellant further set forth causes of action for estoppel and misrepresentation. Appellant, in its complaint, asked that the SWAP Agreement be declared void and also sought compensatory and punitive damages, pre and post-judgment interest and attorney's fees and expenses.

{¶10} On March 1, 2011, appellee filed a Motion to Dismiss, arguing that appellant's claims against it were barred by the release contained in Section 9 of the Loan Assumption and Modification Agreement.  After appellant filed a response to such motion, the trial court, on April 14, 2011, converted the Motion to Dismiss to a Motion for Summary Judgment. Appellant then filed a memorandum in opposition to the Motion for Summary Judgment on June 20, 2011.

{¶11} Pursuant to an Order filed on August 5, 2011, the trial court granted appellee's Motion for Summary Judgment, finding that the release contained in Section 9 of the Loan Assumption and Modification Agreement was valid and barred appellant's claims.

{¶12} Appellant now raises the following assignment of error on appeal:

{¶13} "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE FIFTH THIRD BANK'S MOTION FOR SUMMARY JUDGMENT AS GENUINE ISSUES OF MATERIAL FACT REMAINED TO BE ADJUDICATED."

STANDARD OF REVIEW

{¶14} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, we must refer to Civ.R. 56 which provides, in pertinent part: "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * * "

{¶15} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of

material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997-Ohio-259, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

**{¶16}** It is pursuant to this standard that we review appellant's assignment of error.

I

**{¶17}** Appellant, in its sole assignment of error, argues that the trial court erred in granting summary judgment in favor of appellee. We disagree.

**{¶18}** At issue in the case sub judice is whether the trial court erred in holding that the release contained in Section 9 of the Loan Assumption and Modification Agreement barred appellant's claims. "A release is a contract that is favored by the law to encourage the private resolution of disputes." *Lewis v. Mathes,* 161 Ohio App.3d 1, 2005-Ohio-1975, 829 N.E.2d 318, ¶ 14 (4th Dist.). "A release may be defined as the giving up or abandoning of a claim or right to the person against whom the right is to be enforced or exercised." *Fabrizio v. Hendricks*, 100 Ohio App.3d 352, 356, 654 N.E.2d 127 (11th Dist. 1995). "A release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp*, 50 Ohio St.3d 10, 13, 552 N.E.2d 207 (1990).

**{¶19}** In *Task v. National City Bank*, 8th Dist. No. 65617, 1994 WL 43883 (Feb. 10, 1984), the court explained as follows: "A release ordinarily operates to extinguish a right in exchange for some consideration and effectively operates as an estoppel or a defense to an action by the releasor. As such, it is a contract between parties, enforceable at law subject to the rules governing the construction of contracts. Whether a release operates upon a certain liability depends entirely upon the intention of the

parties, which is to be gathered from the language of the release and the state of facts then existing. If the parties to a release intend to leave some things out of a release, then 'their intent to do so should be made manifest.' When the terms of a contract are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the language employed by the parties. Moreover, when the parties have negotiated the release with the assistance of legal counsel, and both sides have agreed to the language included in the release, there is an assumption that the parties are fully aware of the terms and scope of their agreement." Id. at 4. (Internal citations omitted).

{¶20} Appellant, in the case sub judice, argues that the oral SWAP Agreement is not included within the scope of the release and notes that the Loan Assumption and Modification Agreement does not specifically mention or otherwise refer to the same. Appellant points out that the Recitals contained in the Loan Assumption and Modification Agreement do not expressly mention the SWAP Agreement and argues that none of the covenants contained in the Loan Assumption and Modification Agreement mention the SWAP Agreement or indicate that the Loan Assumption and Modification Agreement is intended to apply to the same. Appellant also argues that the SWAP Agreement is, by definition, a derivative contract and not a loan and that, therefore, the release could not apply to the same. Finally, appellant argues that at a minimum, the release is ambiguous.

{¶21} However, we concur with the trial court that the release clearly and unambiguously released any claim that appellant had against appellee "which now exists, or hereinafter arises, whether known or unknown, arising from or in any way related to the facts in existence as of the date hereof." (Emphasis added). The

language in the release is very broad and there is no language in the same excluding the SWAP Agreement from the scope of the release. Had the parties intended to exclude claims relating to the SWAP Agreement from the scope of the release, they could have done so. Moreover, claims relating to the SWAP Agreement clearly related to the facts in existence as of May 25, 2010, the date that the Loan Assumption and Modification Agreement was executed. Most of the allegations in appellant's complaint relate to events that occurred in 2008, clearly before execution of the Loan Assumption and Modification Agreement in 2010.

{¶22} Appellant, in its brief, also argues that there is a genuine issue of material fact as to whether or not the release bars appellant's claims arising after May 25, 2010, the date of execution of the Loan Assumption and Modification Agreement. Appellant, after the date of execution, paid appellee certain fees, costs and charges including a termination fee of $40,000.00, pursuant to the SWAP Agreement, and now seeks recovery of the same. However, the release barred any claims, known or unknown, arising <u>after</u> the date of execution of the agreement which arose from or in any way related to the facts in existence as of May 25, 2010. While appellant may not have been aware that it would be required to pay a termination fee or any other costs, charges or fees pursuant to the SWAP Agreement after May 25, 2010, the release clearly covered "unknown" claims relating to the facts in existence as of May 25, 2010. The SWAP Agreement clearly was in existence as of such date and thus, appellant's obligation to pay the termination fee and other SWAP Agreement costs, or fees, pre-dated May 25, 2010, and claims relating to the same are barred by the release.

**{¶23}** As noted by appellee, "[a]ppellant's right to rid itself of its obligation for termination fees and other future costs, charges and fees was in existence when the Modification Agreement was executed. Appellant elected to accept the benefits of the Modification Agreement in exchange for releasing its claim to avoid future costs, charges and fees."

**{¶24}** Appellant's sole assignment of error is, therefore, overruled.

**{¶25}** Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.

By: Edwards, J.

Gwin, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/d0327

[Cite as *Richland Auto Group, Inc. v. Fifth Third Bank*, 2012-Ohio-3060.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| RICHALND AUTO GROUP, INC. | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| FIFTH THIRD BANK | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 11CA77 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES