NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0420n.06

No. 12-4126

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Apr 25, 2013*
DEBORAH S. HUNT, Clerk

COMA INSURANCE AGENCY, INC.,      )
                                   )
    *Plaintiff-Appellant*,              )      ON APPEAL FROM THE UNITED
                                   )      STATES DISTRICT COURT FOR
v.                                 )      THE NORTHERN DISTRICT OF
                                   )      OHIO
SAFECO INSURANCE CO., et al.,      )
                                   )
    *Defendants-Appellees.*             )

Before: MOORE and STRANCH, Circuit Judges; and HOOD, District Judge.[*]

HOOD, District Judge.  Plaintiff-Appellant CoMa Insurance Agency ("CoMa") asks us to consider whether the district court erred when it granted the Motion for Judgment on the Pleadings filed by Defendants-Appellees Safeco Insurance Company of America, General Insurance Company of America, First National Insurance Company of America, Safeco National Insurance Company, Safeco Insurance Company of Illinois, Safeco Lloyds Insurance Company, Safeco Insurance Company of Oregon, Safeco Insurance Company of Indiana, American States Insurance Company, American Economy Insurance Company, American States Insurance Company of Texas, American States Lloyds Insurance Company, American States Preferred Insurance Company, and Insurance Company of Illinois (hereinafter, collectively, "Safeco"). [1:11-cv-1473, DE 19.] First, we must determine whether the district court correctly concluded that Safeco did not breach the parties' Agency Agreement when it unilaterally changed the commission schedule which governed payments

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

to be made to CoMa after the termination of their Agency Agreement. We agree with the district court that Safeco did not breach the parties' Agency Agreement. We then conclude that the district court did not err when it determined that equitable theories of relief were no longer available to Plaintiff once it was determined that a valid contract governed the dispute. The judgment of the district court will be affirmed. [DE 20.]

## I.

CoMa managed an on-line platform that allowed customers to obtain insurance quotes, based on an on-line questionnaire, from multiple insurance carriers. Customers were also able to purchase any of the quoted policies through this platform. On March 1, 2003, CoMa and Safeco entered into an agreement in which CoMa agreed to sell Safeco's insurance policies through the platform in exchange for commissions on the initial sale and any subsequent renewal of the policy. Section 5.1 of that Agreement provided that Safeco "will pay [CoMa] commissions on written premiums. . ." [DE 1-1 at 19.] Section 5.1.1 provided that the "commissions payable to [CoMa] shall be at the rates set forth in Schedule A attached hereto and incorporated herein by reference." [DE 1-1 at 20.] Schedule A, itself, provided that the listed "[r]ate applies to annual Net Written Premium and may vary only as specified in [Schedule A] or an addendum hereto." [DE 1-1 at 29.] Section 5.1.2 provided that Safeco "may make changes to its commission schedules upon sixty (60) days prior written notice to Agency." [DE 1-1 at 20.] Section 9.2 provides that "All terms, conditions and limitations in this Agreement shall continue to be effective after termination [without cause] pursuant to Article[] 8.3 . . . for so long as Policies or Renewals are in effect. . ." [DE 1-1 at 23.] Section 12.13 provides that "[n]o change, alteration, or modification [of the Agency Agreement] may be made except in writing that expressly refers to this Agreement and is signed by both parties." [DE 1-1 at 27.]

The applicable commission rates were amended several times during the course of the parties' Agreement. For example, in 2004, CoMa expanded its business to fourteen new states, and the Schedule A rates were replaced with the commission rates available at safecoplaza.com as of January 1, 2004. [DE 1-1 at 59.] In that instance, Safeco agreed with CoMa that it would not lower the rates in force on January 1, 2004, until December 31, 2005, and that it would pay an additional three percent commission on new policies written in the fourteen new states. [DE 1-1 at 59.]

On July 22, 2010, CoMa notified Safeco that it was terminating the agreement without cause, effective 180 days from the notice date, in keeping with Section 8.3 of the Agreement. [*See* DE 1-3; DE 1-1 at 22] The parties agreed, in a letter of the same date, that from July 22, 2010, until at least six months after termination of the agreement, the commission rates effective as of the date of CoMa's notice would continue, "subject to any general adjustment (increase or decrease) in agent commission rates made by [Safeco]." [DE 4-2.]

Then, by a letter dated May 23, 2011, Safeco notified CoMa that it would be reducing the commission rates paid for renewal policies, effective on or after August 1, 2011, lowering agent renewal rates to zero percent and reducing CoMa's renewal rates to five percent [DE 4-3].

**II.**

We review *de novo* a district court's decision on a motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c). *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 846 (6th Cir. 2012) (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)). A motion for judgment on the pleadings is evaluated by the same standard as a Rule 12(b)(6) motion to dismiss. *Id.* To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the

3

moving party is nevertheless clearly entitled to judgment." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012) (quoted case omitted).

**III.**

We are asked to determine whether Safeco breached the parties' Agency Agreement when it unilaterally changed commission rates payable to CoMa after the termination of the Agency Agreement and conclude that Safeco committed no breach of the terms of that Agency Agreement when the terms are given their plain meaning and read together as a whole. For the reasons stated here, we conclude that Safeo committed no breach. We further conclude that the district court did not err when it determined that equitable theories of relief were no longer available to Plaintiff once it was determined that a valid contract governed the dispute.

**A.**

Under Ohio law, to prevail on a breach of contract claim, a plaintiff must demonstrate "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994) (citing 2 Ohio Jury Instructions (1993), Section 253.01, at 111-12; *Am. Sales, Inc. v. Boffo*, 593 N.E.2d 316, 321 (Ohio Ct. App. 1991)). We consider the terms of the contract between the parties to determine whether Safeco breached the agreement, as Plaintiffs aver. Contract terms are generally to be given their ordinary meaning when the terms are clear on their face, and we will apply the plain language of the contract when the intent of the parties is evident from the clear and unambiguous language in a provision. *Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 683 (6th Cir. 2000); *Karabin v. State Auto. Mut. Ins. Co.*, 462 N.E.2d 403, 406 (Ohio 1984) (interpreting insurance policy). The language of a contract is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d

4

1201, 1208 (Ohio Ct. App. 1998) (citing *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991)). A contractual "term is not ambiguous merely because two parties offer substantially different interpretations." *Glidden Co. v. Kinsella*, 386 F. App'x 535, 542 (6th Cir. 2010) (citing *216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008)). Nor does a term in a contract "become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto and a corresponding advantage to the other. . .[;] it is not the province of courts to relieve parties of improvident contracts. . . ." *Ohio Crane Co. v. Hicks*, 143 N.E. 388, 389 (Ohio 1924). Finally, a contract is to be read as a whole, and effect must be given to each provision of the contract, if it is reasonable to do so. *Saunders v. Mortensen*, 801 N.E.2d 452, 455 (Ohio 2004) (citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997); *Expanded Metal Fire-Proofing Co. v. Noel Constr. Co.*, 101 N.E. 348, 350 (Ohio 1913)). "'[W]here two interpretations can be given to a term in a contract, [but ] one will make a provision meaningless, and one. . .will give full force to all provisions, the latter must be adopted.'" *Aho v. Cleveland-Cliffs, Inc.*, 219 F. App'x 419, 423 (6th Cir. 2007) (quoting *Lightning Rod Mut. Ins. Co. v. Midwestern Indem. Co.*, No. 85-C-61, 1987 WL 8425, *3 (Ohio Ct. App. Mar. 24, 1987)).

Section 5.1.1 of the Agreement provides that Plaintiff is to be paid commissions as set forth in Schedule A to the agreement which, itself, further limits that commission payments are to be paid "as specified in this schedule or an addendum [thereto]." [R. at 1-1.] Section 5.1.2 provides that Safeco may make changes to its commission schedules—with no further specification of which commission rates the section refers—upon 60 days written notice to CoMa. CoMa asks us to conclude that Section 5.1.2's provision for Safeco to unilaterally change its commission schedules does not apply to the Schedule A commission rates agreed to by the parties in Section 5.1.1, as though Schedule A is not itself a commission schedule. CoMa argues that Schedule A may be

5

changed only by mutual agreement of the parties pursuant to Section 12.13 of the Agency Agreement because Section 5.1.1's specific term, "Schedule A," controls over the general term "commission schedules" found in Section 5.1.2. We disagree.

Ohio law teaches that a specific contractual term will control a general term where two clauses in a contract appear inconsistent, *see Penton Media, Inc. v. Affiliated FM Ins. Co.*, 245 F. App'x 495, 500 (6th Cir. 2007), but Sections 5.1.1 and 5.1.2 are not inconsistent. Schedule A is a commission schedule and, thus, it can be modified unilaterally under Section 5.1.2 in the absence of some specific exclusion of that particular commission schedule from the provisions of Section 5.1.2. Section 5.1.1 sets out only where the commission schedule is to be found, while 5.1.2 sets out the terms under which that commission schedule may change. Similarly, section 12.13, the integration clause, is not inconsistent with section 5.1.2. Section 12.13 provides that the "Agreement embodies the entire understanding between the parties"; all prior communications are merged into the Agreement; and "[n]o change, alteration, or modification . . . may be made except in writing that expressly refers to this Agreement and is signed by both parties." The parties' integrated Agreement included Section 5.1.2, which permits Safeco to change its commission schedules with sixty days prior written notice to CoMa. The parties mutually agreed to Section 5.1.2 when the Agreement was initially negotiated and reduced to writing and thus, Section 12.13 does not create a conflict

Further, we do not agree with CoMa that this reading of the Agency Agreement fails to give effect to Section 9.3, which provides that, if the Agency Agreement is terminated, Safeco "shall continue to pay [CoMa] renewal commission for each Renewal in accordance with Article 5.2, and subject to Section 5.4." [DE 1-1 at 23.] Sections 5.2 and 5.4 set forth the timing of commission payments and the amounts to be "set off" from them. They do not address Safeco's right to change commission rates under Section 5.1.2 with appropriate notice.

6

Since Safeco had the right to unilaterally change commission rates with adequate notice, we conclude that it did not breach the Agency Agreement when it sent its May 23, 2011, letter notifying CoMa of the rate changes that would take effect more than 60 days later, on August 1, 2011. We affirm the judgment of the district court in this regard.

**B.**

Finally, the district court properly concluded that Plaintiff cannot recover under its alternative theories of relief—promissory estoppel and unjust enrichment. Since a contract governs the dispute in this instance, equitable relief is not available to Plaintiff under Ohio law. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 371 F. Supp. 2d 933, 943 (N.D. Ohio 2005) ("Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject.") (citing *Ullmann v. May*, 72 N.E.2d 63 (1947); *Joseph Oldsmobile/Nissan, Inc. v. Tom Harrigan Oldsmobile, Inc.*, No. 14788, 1995 WL 276804 (Ohio Ct. App. May 10, 1995); *City of Cincinnati v. Cincinnati Reds*, 483 N.E.2d 1181 (Ohio Ct. App. 1984); *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975)).

**IV.**

Accordingly, we **AFFIRM** the judgment of the district court.