WHITT ET AL., APPELLANTS, *v.* HUTCHISON ET AL., APPELLEES.

(No. 74-812—Decided July 2, 1975.)

*Mr. Ronald D. Keener*, for appellants.

*Mr. Charles J. Chastang* and *Mr. John H. Burtch*, for appellees.

STERN, J. In paragraphs one and two of the syllabus in *Tanner* v. *Espey* (1934), 128 Ohio St. 82, 190 N. E. 229, the court held:

"1. If one who has suffered personal injuries by reason of another's negligence exercises reasonable care in obtaining the services of a competent physician or surgeon, and such injuries are thereafter aggravated by the negligence, mistake or lack of skill of such physician or surgeon, such aggravation is a proximate result of the negligence of the original tort feasor, and he is liable therefor.

"2. If one has suffered personal injuries which thereafter were aggravated by the malpractice of an attending physician or surgeon, and then executes a valid, general and unconditional release to the original tort feasor, in full settlement for all present and future claims and causes of action, such release operates as a bar to an action against such physician or surgeon for such malpractice."

In the recent case of *Travelers Indemnity Co.* v. *Trowbridge* (1975), 41 Ohio St. 2d 11, 321 N. E. 2d 787, this court alluded to the holding in paragraph one of the syllabus of *Tanner* v. *Espey*, that negligence in causing bodily injury to a person is a proximate cause of the aggravation of that injury caused by the subsequent independent negligence of

a physician in treating the injury. The court, at page 15, stated therein that "[t]he physician and the tortfeasor are not typical concurrent tortfeasors but, rather, are more in the nature of successive tortfeasors," and held that their joint responsibility for the aggravation of the injury is equitably that of primary liability on the part of the doctor and secondary liability on the part of the original tortfeasor. No release was involved in the *Trowbridge case*, and therefore the second paragraph of the syllabus in *Tanner* was not at issue.

*Tanner* is on all fours with the facts of the instant case, and, if followed, requires the affirmance of the Court of Appeals. Appellants argue that the trend in the law of other states is away from the *Tanner* rule and that it should be overruled. We disagree. The difficulties and injustices of common-law rules regarding the effect of releases have been replaced in this state by principles of law which permit an injured party to settle that injury and action as he may intend. The effect of such a settlement upon the rights and obligations of others who might also be jointly liable for the injury is established, and is in accord with the holding in *Tanner*, and with the trend in the law allowing the expressed intention of the parties in releases and covenants not to sue to determine the liability of others jointly liable for the same injury. Therefore, no reason appears to modify the holding in *Tanner*.

At common law, the traditional rule was that a general release executed in favor of one charged with a wrong extinguished the right of action against all those jointly liable for the same wrong. The somewhat metaphysical theory of this rule is that for a single injury there is a single, indivisible cause of action, and that a general release for valuable consideration (or even, in some cases, for none), is a satisfaction of the injury and a release of the cause of action. *Cocke* v. *Jennor* (K. B. 1614), 80 Eng. Rep. 214; *Price* v. *Baker* (1959), 143 Colo. 264, 352 P. 2d 90 (overruled in part by *Cox* v. *Pearl Investment Co.* [1969], 168 Colo. 67, 450 P. 2d 60); *Dougherty* v. *California Kettelman Oil Royalties* (1939), 13 Cal. 2d 174, 88 P. 2d 690; *Muggenburg* v.

*Leighton* (1953), 240 Minn. 21, 60 N. W. 2d 9 (but, see, *Gronquist* v. *Olson* [1954], 242 Minn. 119, 64 N. W. 2d 159); Salmond on Torts (14 Ed.) 635.

In some cases, it was even held that a release of one jointly liable acted as a release of all, even though the release contained an express provision to the contrary. *Ellis* v. *Bitzer* (1825), 2 Ohio 89. See, *e. g., Atlantic Coast Line R. R. Co.* v. *Boone* (Fla. 1956), 85 So. 2d 834; *Getzendaner* v. *United Pacific Ins. Co.* (1958), 52 Wash. 2d 61, 322 P. 2d 1089.

The injustice of the traditional rule was that it frequently acted to extinguish a cause of action which was only partly compensated, even though the parties themselves had no such intention. The rule also made it very difficult for a claimant to settle a claim by partial settlements with several persons who were jointly liable for his injury. A major cause of these difficulties was the doctrine of joint liability itself, a doctrine largely grounded in a policy of assuring compensation for injured plaintiffs, but which the traditional rule paradoxically converted into a burden and a trap for unwary plaintiffs. Prosser, Joint Torts and Several Liability, 25 Cal. L. Rev. 413.

In recent years, the strict limitations of the traditional rule have been largely abandoned. The parties in the instant case have exhaustively canvassed the law on this point, and their efforts have been most helpful. See Annotation, 39 A. L. R. 3d 260. Only four states appear to have retained the traditional common-law rule. All the others have held that the intention of the parties governs whether a release of one tortfeasor releases others, although the means of determining intent differs.

Under the Uniform Contribution Among Tortfeasors Act, a release of one joint tortfeasor "does not discharge the other tortfeasors unless the release so provides." That Act, or a form of it, has been adopted in 18 states. Courts in these states have differed, however, as to whether a general release of all claims or causes of action arising out of an accident is a discharge of other tortfeasors who are jointly liable but not specifically named. See, *e. g., Morison*

v. *General Motors Corp.* (C. A. 5, 1970), 428 F. 2d 952; *Peters* v. *Butler* (1969), 253 Md. 7, 251 A. 2d 600; *Dorenzo* v. *General Motors Corp.* (E. D. Pa. 1971), 334 F. Supp. 1155, holding that a person need not be specifically named in order to be discharged by a release. Contra, *Young* v. *State* (Alaska 1969), 455 P. 2d 889; *Raughley* v. *Delaware Coach Co.* (1952), 47 Del. 343, 91 A. 2d 245.

Four states have other statutes which are similar in effect to the Uniform Act.

Five states, including Ohio, presume that a general, unconditional release is a satisfaction of the claim, absent express language or other proof to the contrary. In at least five other states, this rule or some form of the traditional rule are generally followed, but an exception is made for medical malpractice cases. Those courts have held that the original injury and its aggravation are considered to be independent injuries, and that the doctor is released if that was the intent of the parties or if the consideration paid was in fact a full satisfaction. The effect of these cases is perhaps best expressed by the Wisconsin rule that the general release of an original tortfeasor is rebuttably presumed not to release a malpractice cause of action for aggravated injuries, unless the intention to do so is clearly and expressly stated in the release. *Krenz* v. *Medical Protective Co. of Fort Wayne* (1973), 57 Wis. 2d 387, 204 N. W. 2d 663. The court in that case also permitted the original parties to amend a release which inadvertently had the effect of releasing a malpractice action.

Altogether, aside from states under the Uniform Act, it appears that 14 states by judicial opinion require that the release of a doctor for aggravation of an injury be expressly included in the release to be effective. Other states, in general, hold that the effect of a release depends upon the intention of the parties, without having decided whether a general release is presumed to release a doctor for aggravation of the original injury.

In Ohio, as well, the courts have established that the intention of the parties governs in interpretation of releases. Reversal of the judicial interpretation given by past

cases would now tend to defeat those intentions by changing the principles of law upon which such a document must rely.

In the early Ohio case of *Ellis* v. *Bitzer, supra* (2 Ohio 89), it was held that a release to two of five defendants for assault and battery, such release to be "in satisfaction as to them but not to operate as a satisfaction for the other defendants," was a discharge of all five. That case was overruled and the traditional rule most forcefully rebutted by Judge Wanamaker, speaking for a unanimous court in *Adams Express Co.* v. *Beckwith* (1919), 100 Ohio St. 348, 355:

"Upon what principle the court took a contract between the parties, which was in plain, definite and unambiguous terms, and wrote into that contract not only what it did not contain, but what the contract expressly said it should not contain, is beyond understanding. It emphasizes the importance of a release without a complete satisfaction and extinguishes a right without such satisfaction.

"There is neither reason, rhyme, nor righteousness in such a course of reasoning, if it may be called reasoning at all. There is nothing peculiar or exceptional about contracts of release, or contracts not to sue, or contracts to cease prosecuting a suit. They are presumably to be construed, if in doubt, by the same rules of arriving at the intention of the parties as any other kinds of contract.

"But courts unfortunately have too often not only disregarded the intention of the parties in such kinds of contracts, but have made new contracts for the parties squarely contrary to what the parties themselves intended. The *Bitzer case* is, therefore, disapproved."

Judge Wanamaker went on to state, at page 357:

"If, however, the language of the release is unqualified and absolute in its terms, it may be fairly said that a presumption does arise that the injury has been fully satisfied, because the parties would not be presumed to split the redress into fractional parts. But such a presumption cannot arise where the very terms of the release are squarely to the contrary.

"Presumptions must not be indulged to defeat the manifest intention of the parties to the contract. The purpose is to promote such intention where the language of the parties is not clear."

Subsequent Ohio cases, although with some exceptions and variations in language, have established that a plaintiff may settle a claim for partial satisfaction with one tortfeasor by means of a covenant not to sue, and that covenant will not act as a bar to further suit against another tortfeasor who is also liable (*Bacik* v. *Weaver* [1962], 173 Ohio St. 214, 180 N. E. 2d 820), even where the suit is brought against a party who is only secondarily liable and who may have a right of indemnity against the party in favor of whom the covenant not to sue was executed. *Diamond* v. *Davis Bakery* (1966), 8 Ohio St. 2d 38, 222 N. E. 2d 430. But, see, *Herron* v. *Youngstown* (1940), 136 Ohio St. 190, 24 N. E. 2d 708; *Hillyer* v. *East Cleveland* (1951), 155 Ohio St. 552, 99 N. E. 2d 772. The *Adams Express* case held that a release reserving a right of action against other wrongdoers was also legal and effective.

These decisions have established a clear distinction in Ohio law between releases and covenants not to sue. In the case of a release that is unqualified and absolute in its terms, a presumption arises that the injury has been fully satisfied. *Adams Express* v. *Beckwith, supra; Davis* v. *Buckeye Light & Power Co.* (1945), 145 Ohio St. 172, 61 N. E. 2d 90; *Garbe* v. *Halloran* (1948), 150 Ohio St. 476, 83 N. E. 2d 217. This presumption may be rebutted by the express reservation of rights against other parties (*Garbe* v. *Halloran, supra*), or the release may be avoided under the powers of equity, where the releasor can establish by clear and convincing evidence that it was executed by mutual mistake. *Sloan* v. *Standard Oil Co.* (1964), 177 Ohio St. 149, 203 N. E. 2d 237, overruling *O'Donnel* v. *Langdon* (1960), 170 Ohio St. 528, 166 N. E. 2d 756.

A covenant not to sue, which does not purport to release or transfer any cause of action for an injury and which does not expressly recognize the consideration paid thereunder as full satisfaction for the injury, will not bar

actions against others for causing the injury where the injury has not been fully compensated. Such a covenant need not expressly reserve rights against others. *Bacik v. Weaver, supra* (173 Ohio St. 214).

The distinctions between these two types of instruments doubtless have been relied upon by claimants and the meaning of those distinctions should be clear to practitioners of Ohio law. A party is free to bargain for the type of instrument he desires to execute and for the consideration due thereunder. His legal rights and liabilities may well depend upon the form of instrument chosen, particularly in cases where there is a right of indemnity or a contractual right of contribution, or where some group of individuals are all subject to possible liability for a single injury. One charged as a tortfeasor may well wish to terminate the entire litigation, in order to protect himself against claims of other tortfeasors or to avoid involvement as a witness in further litigation. An absolute unqualified release in full satisfaction of an injury in such cases gives the party released the protection he would not obtain under a covenant not to sue, and these benefits may well be reflected in the consideration given for the release.

In the instant case, plaintiff, with advice of counsel, chose to execute an unconditional release for consideration of $6,000, over three and one-half years after the original injury. Such a release is presumed in law to be a release for the benefit of all the wrongdoers who might also be liable, and to be a satisfaction of the injury. That presumption stands unrebutted in the instant case, and bars suit to recover for an alleged aggravation of injuries.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, CELEBREZZE and W. BROWN, JJ., concur.

P. BROWN, J., concurs in paragraph one of the syllabus, but dissents from paragraph two of the syllabus and the judgment.