470

SWENSON ET AL., APPELLEES, *v.* EWY ET AL., APPELLANTS.

(No. 77-781—Decided June 28, 1978.)

Messrs. *Spangenberg, Shibley, Traci & Lancione, Mr. Norman W. Shibley* and *Mr. William W. Lamkin,* for appellees.

Messrs, *Porter, Wright, Morris & Arthur, Mr. Earl F. Morris* and *Mr. Craig D. Barclay,* for appellant Ewy.

Messrs. *Lane, Alton & Horst, Mr. Collis Gundy Lane* and *Mr. Jack R. Alton,* for appellant O'Sullivan.

Messrs. *Knepper, White, Arter & Hadden, Mr. Richard L. Miller* and *Mr. W. Locke McKenzie,* for appellants The Hawkes Hospital of Mt. Carmel, Paisan and Herondey.

LOCHER, J. Appellants based their appeal upon the alleged application to the instant cause of the legal principle espoused in *Whitt* v. *Hutchison* (1975), 43 Ohio St.

2d 53, and *Tanner* v. *Espey* (1934), 128 Ohio St. 82, that "[i]f one has suffered personal injuries which thereafter were aggravated by the malpractice of an attending physician or surgeon, and then executes a valid, general and unconditional release to the original tortfeasor, on advice of counsel, in full settlement for all present and future claims and causes of action, such release operates as a bar to an action against such physician or surgeon for such malpractice."

The Court of Appeals, however, rejected the trial court's holding that the legal precept enunciated in *Tanner, supra,* and *Whitt, supra,* was dispositive of the instant cause. Finding, instead, that appellee, the releasor, had shown by clear and convincing evidence that it was the intention of the parties to this form-type release to discharge only existing claims, not claims aganst hypothetical tortfeasors, the Court of Appeals equitably reformed the release to exclude the instant claim for which appellee had received no settlement and which was not intended to be released. See *Sloan* v. *Standard Oil Co.* (1964), 177 Ohio St. 149.

A strict adherence to our prior decisions, as urged by appellants, could arguably require a judgment in favor of appellants. However, a realistic, rational evaluation of the facts *sub judice,* our prior decisions and the pertinent principles of medical tort law necessitate an affirmance of the judgment of the Court of Appeals. As noted by the Court of Appeals, the instant cause presents a factual situation distinguishable in a relevant manner from the fact pattern of our two previous decisions. In *Tanner, supra,* the aggravation of the original injury was known and existed at the time of the release, and in *Whitt, supra,* the release was executed subsequent to the injury and the treatment thereof, which was the subject of that malpractice action. In the instant cause, the general and unconditional release was executed when no one was aware of the injury, which necessitated the surgery, resulting in the alleged successive tort, a wrong for which the doctors and

hospital would be primarily responsible, pursuant to our decision in *Travelers Indemnity Co.* v. *Trowbridge* (1975), 41 Ohio St. 2d 11.

A close examination of *Tanner, supra,* but more specifically of *Whitt, supra,* reveals an important facet of the legal precept herein considered. In holding that the release barred the malpractice action against the physician, the court in *Tanner* expressed the logic behind its conclusion, at page 85, as follows:

"It is a fundamental rule of law that but one satisfaction can be exacted for the same demand. Billiter was liable for all of the plaintiff's injuries including the aggravation thereof. She saw fit to give Billiter a release in full for all claims and causes of action, presumbly because she considered her total damages to be $7,000, and knew he was fully liable therefor."

The opinion, in *Whitt, supra,* further visibilizes this relevant concept alluded to in *Tanner, supra.* Although, in *Whitt, supra,* the court reiterated the second paragraph of the syllabus in *Tanner, supra,* as part of its syllabus, Justice Stern, in writing for the court, expressed the reason for holding that the unconditional release of the original tortfeasor barred the action against the physician, in the following manner, at page 61:

"* * * Such a release is presumed in law to be a release for the benefit of all the wrongdoers who might also be liable, and to be a satisfaction of the injury. That presumption stands unrebutted in the instant case, and bars suit to recover for an alleged aggravation of injuries."

More succinctly, the opinion in *Whitt, supra,* at page 60, provides:

"* * * In the case of a release that is unqualified and absolute in its terms, a presumption arises that the injury has been fully satisfied. * * * This presumption may be rebutted by the express reservation of rights against other parties * * * or the release may be avoided under the powers of equity, where the releasor can establish by clear and convincing evidence that it was executed by

mutual mistake. *Sloan* v. *Standard Oil Co.* (1964), 177 Ohio St. 149 * * *."

In *Sloan, supra,* this court stated that "[t]he dispositive inquiry in each case is what did the parties intend?" Recognizing that the wording of the release is not conclusive, the court went on to list certain factors that have been judicially recognized as aids in determining the intent of the parties at the time the release was executed. Among those listed, at page 153, is "the contention that the injuries were in fact unknown at the time the release was executed * * *." Moreover, the affirmance in *Sloan, supra,* of the trial court's finding that there existed a mutual mistake at the execution of the release was premised, in part, as indicated on page 154, upon the following:

"* * * [A]nd neither party was aware as to the nature, extent, or degree of gravity of the releasor's injury."

In the instant cause, there can be no question as to the intentions of the parties to the release concerning the alleged successive tortfeasors, since, at the time of the release, neither party was aware of the injury, of the alleged subsequent malpractice or of the consequent aggravation of the injury. Therefore, the release could not have possibly been entered into with a view towards protecting unknown successive tortfeasors for an injury, as of then unknown, or as compensation for the successive tort.

Where, as herein, the presumption is overcome by clear and convincing evidence of mutual mistake, in that the release was not actually intended to release the doctors and the hospital, who in the future may treat the tort victim, from the malpractice which the parties had no reason to consider, and the amount paid to the tort victim cannot possibly be viewed as full compensation for the claims against the original tortfeasor and the doctors and the hospital as well, the executed, general and unconditional release does not discharge allegedly negligent treating physicians or hospital.

To find to the contrary not only would permit the successive torfeasors, who made no payment towards sat-

isfaction of the injury they wrongfully inflicted, to reap a windfall because of a release that was not contemplated as protecting them, but would embark Ohio's tort law on a novel and aberrant course contraposed to the modern principles of tort law. Those principles include "[t]he purpose of the law of torts * * * to adjust * * * losses and to afford compensation for injuries sustained by one person as the result of another [Wright, Introduction to the Law of Torts, 8 Camb. L. J. 238 (1944)]." Our finding to the contrary would also deviate from the historical foundations of tort law. (See 1 Harper & James, Torts, at page XXXIX [1956], wherein it is stated that: "At the beginning of the twentieth century, we find the common law of torts as developed over the centuries, reflecting certain basic social policy. These policies represent deep-rooted notions of fairness and justice in human relations which have gradually become crystallized into legal principles from the ethical, economic and political philosophy of the Anglo-American people. Policies thus evolved, in many ways, embody the aspirations and the ideals of culture with respect to the relations of one man to another in the community.")

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, CELEBREZZE and SWEENEY, JJ., concur.
W. BROWN and P. BROWN, JJ., concur in the judgment.
O'NEILL, C. J., not participating.