BECK, APPELLEE, v. CIANCHETTI, ADMR., APPELLANT.

[Cite as Beck v. Cianchetti (1982), 1 Ohio St. 3d 231.]

(No. 81-1670—Decided August 18, 1982.)

232

*Nukes & Perantinides Co., L.P.A., Mr. Paul G. Perantinides* and *Ms. Elizabeth B. Manning,* for appellee.

*Buckingham, Doolittle & Burroughs Co., L.P.A., Mr. William M. Oldham* and *Mr. Seth A. Jacobs,* for appellant.

## I.

CELEBREZZE, C.J. The first question presented for our determination is whether the phrase "all other persons" interspersed with other language on the printed insurance form released an unnamed person.

Under common law, a general unqualified release executed in favor of one charged with a wrong extinguished the right of action against all those jointly liable for the same wrong. *Whitt* v. *Hutchison* (1975), 43 Ohio St. 2d 53 [72 O.O. 2d 30]. The injustices of this traditional rule were recognized and discussed in *Whitt* and this court concluded that the strict limitations had been largely abandoned and that Ohio courts "have established that the intention of the parties governs in interpretation of releases." *Id.* at 58. Thus, exceptions evolved in the common law which mitigated the harsh effects of releasing all tortfeasors.

The General Assembly considered the release of tortfeasors and enacted R.C. 2307.32 which became effective in 1976. That section provides in pertinent part that:

"(F) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

"(1) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms otherwise provide, but it reduces the claim against the other to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater;"[3]

Apparently the General Assembly intended to change the common law; otherwise, there would have been no reason to enact the statute. The legislative mandate in R.C. 2307.32 abrogates the common law rule which provided that a release given to one tortfeasor was a release to all others (see *Whitt, supra*) and often entrapped the average person into reasonably assuming that settling a claim with one person would have no effect upon rights against others with whom he did not deal. Instead, R.C. 2307.32 provides that a release to one tortfeasor does not discharge any other tortfeasor "unless its terms otherwise provide." The thrust of the section is to retain the liability of tortfeasors and, thus, the phrase "unless its terms otherwise provide" should

---

[3] The Ohio statute was modelled after the Uniform Contribution Among Tortfeasors Act. The Uniform Act states that a release does not discharge other tortfeasors "unless its terms *so* provide," while R.C. 2307.32(F)(1) uses the phrase "unless its terms *otherwise* provide." (Emphasis added.) We agree with the Court of Appeals that this difference of a single word is not significant. Several other states have adopted the Uniform Act. However, there is not a consensus among the jurisdictions. Some have interpreted this section to require that a joint tortfeasor must be named to be released, others hold that a joint tortfeasor need not be named individually to be released.

be narrowly construed and require a degree of specificity. Allowing a discharge based upon general language which does not name or identify a tortfeasor perpetuates the common law rule and is contrary to the statute.

The statutory phrase "unless its terms otherwise provide" requires a release to expressly designate by name or to otherwise specifically describe or identify any tortfeasor to be discharged. For example, a release could meet the statutory requirement by naming an individual or specifically identifying a tortfeasor such as stating the driver of the car which struck the motorcycle.

The operative language in the release in this case consists of a paragraph of verbiage including blanks to fill in the names of the parties to be released, the amount of the consideration and the date and location of the injury. The critical phrase "all other persons" was among other printed terminology. Beck was 19 years old at the time that she signed the release and did not have advice of counsel.[4]

In evaluating this release, we must consider the relative position of the parties involved. The insurance company prepared the release and presented the form to the injured party, who was unfamiliar with the terminology found in the standard release, and unaware of the legal implications. Therefore, the General Assembly recognizing that unsuspecting injured parties often sign such releases, decided the release of one tortfeasor does not release other tortfeasors, "unless its terms otherwise provide." Consequently, the insurance company has the burden of showing that the injured party understood the terminology and intended the release of the unnamed tortfeasors.

We conclude that R.C. 2307.32 requires that a release designate by name or otherwise specifically identify a party to be released. Broad general language, such as "all other persons," is not sufficient. Thus Cianchetti, appellant's decedent, was not released because he was not specifically identified.

## II.

The second issue is whether cross-examination is allowed to elicit facts to show bias, interest or prejudice of a witness even though it may disclose the existence of liability insurance.

Ohio Evid. R. 411 is applicable and provides that:

"Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against lia-

---

[4] In *Whitt, supra,* decided prior to the enactment of R.C. 2307.32, we considered the advice of counsel to be significant. Paragraph one of the syllabus states that

"A written release in general and unqualified terms, on advice of counsel, made and executed upon legal consideration between a party wronged and one or more of the persons charged with the commission of the wrong, is presumed in law to be a release for the benefit of all the wrongdoers. (Paragraph one of the syllabus of *Adams Express Co.* v. *Beckwith,* 100 Ohio St. 348, followed.)"

bility when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness."

Thus, "the exclusionary principle of Rule 411 applies only where liability insurance is offered to establish negligence or culpability." Blackmore and Weissenberger, Ohio Evidence (1981), 56. However, the Rule allows admission of evidence of liability insurance when offered to prove bias or prejudice of a witness. "Liability insurance may be revealed to the trier of fact in the course of an impeachment involving a statement taken from the witness by an insurance adjustor." *Id.* at 57.

Case law prior to the adoption of Evid. R. 411 is consistent with the Rule according to the Staff Notes. For example, *Booth* v. *Coldiron* (1936), 55 Ohio App. 144 [8 O.O. 425], concerns a statement taken by a representative of the defendant's insurance company. The court concluded that the witness could be cross-examined on facts which may show interest, bias, or motive on the part of a witness, although it may disclose the existence of insurance in a personal injury action. The court stated that the defendant brought the statement and the witness into the case and the plaintiff had a right to question the witness with respect to his position. Furthermore, the jury had the duty to determine the weight and effect it would give to the testimony as reflecting upon whether there was a pecuniary interest in the results of the trial.

Similarly, the Court of Appeals for Hamilton County found that "relevant evidence is not excluded because it may tend to arouse prejudice. This is true as to insurance policies * * *." *Cushman Motor Delivery Co.* v. *Smith* (1935), 51 Ohio App. 421, 425 [4 O.O. 141, 143].

Commentators on the Ohio evidence rules cite another case, *Kraemer* v. *Bates Motor Transport Lines* (1937), 56 Ohio App. 427 [9 O.O. 125], for the proposition that the existence of liability insurance may be used for relevant other purposes, such as proof of agency, ownership, control, bias or prejudice.[5] Although the problem concerns proof of an agency relationship, the principle has been extended to other similar uses.

The Ohio Rule is substantially the same as the comparable federal rule.[6] Courts have interpreted the federal rule and determined that the existence of insurance may be offered for purposes other than to show negligence and other wrongful conduct. The fact that the defendant's insurer employed the defendant's witness was clearly admissible to show bias in *Charter* v. *Chleborad* (C.A. 8, 1977), 551 F. 2d 246, certiorari denied, 434 U.S. 856.

In this case, the trial court refused to allow Beck's counsel to cross-examine appellant's witness, Jon Sample, concerning his employment as an agent of appellant's insurer. Sample's testimony laid the foundation for in-

---

[5] *Blackmore, supra,* and Palmer, Ohio Courtroom Evidence, 97 (1981).

[6] The Staff Note to Evid. R. 411 states that the language is identical to the Federal Evidence Rule 411 with one exception. However, the exception does not apply to the language relevant to this case.

troduction of his tape recorded telephone conversation with John Cianchetti. The tape recorded statement was used by the defense because of John Cianchetti's death prior to trial. The conversation consisted of questions Sample asked Cianchetti about the accident in which his car struck Beck. When he answered the questions, Cianchetti knew that he was a defendant in this lawsuit and he had a pecuniary interest in the resolution of the trial. Beck's counsel could not cross-examine Cianchetti on his taped answers; counsel should have been allowed to cross-examine Sample concerning the circumstances and perspective of the conversation for potential bias, interest and prejudice. Pursuant to Evid. R. 411, we hold that a witness may be cross-examined on facts which may show interest, bias and prejudice even though it may disclose the existence of liability insurance in a personal injury action.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES and KRUPANSKY, JJ., concur in the majority opinion as to Part II thereof but dissent as to Part I of the majority opinion.

HOLMES, J., dissenting. The adoption by the General Assembly of the Contribution Among Joint Tortfeasors Act changed the common-law rule that a general unconditional release of one tortfeasor released all joint tortfeasors. That provision is found in R.C. 2307.32(F)(1) as set forth in the majority opinion.

The issue here is whether a general release such as the one given here which provides for the release of "all other persons, firms, corporations, associations or partnerships" releases all tortfeasors. In other words, must a release specifically name the parties to be released to be effective, or is it proper to use general language to release all parties from potential liability.

While, as the parties point out, different jurisdictions of this country are split on this issue, it is my opinion that the language used here is sufficient to release all alleged joint tortfeasors. Using the language, "unless its terms otherwise provide," the General Assembly has provided for a situation such as the present one. It has varied the common-law rule to the extent that a release of one party to be effective as to others must reasonably provide within its terms for the release of the other parties. This is a deviation from the common-law practice where a release which attempted to preserve rights would be read as a general release. In order for a release to be effective against all alleged joint tortfeasors under the statutory practice, it must so provide. This is what the present release did.

Accordingly, I would reverse the Court of Appeals.

KRUPANSKY, J., concurs in the foregoing dissenting opinion.