[Cite as *Moton v. Schafer*, 2022-Ohio-3505.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Teairra Moton, et al. | Court of Appeals No. L-21-1214 |
| Plaintiffs | Trial Court No. CI0201704763 |
| [Cynthia K. Bennett and Star Moton – Appellants] | |
| v. | |
| Meredith Schafer, Adm. of the Estate of Guy Eugene Bailey, Decd., et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: September 30, 2022 |

* * * * *

Patrick R. Millican, for appellants.

Shannon J. George, for appellees.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from three judgments of the Lucas County Court of

Common Pleas which: (1) granted the Civ.R. 12(B)(6) motion to dismiss three causes of

action by plaintiffs-appellants, Cynthia K. Bennett, who drove the car struck by the

tortfeasor, and Bennett's daughter, Star Moton (hereafter, "appellants"), against

defendant-nonappellee, SafeAuto Insurance Co. and its employees (hereafter,

"SafeAuto"), the tortfeasor's liability insurer, and redacted those causes of action from

the consolidated complaint,[1] (2) redacted and sealed from the second complaint the three

causes of action against SafeAuto, and (3) found the existence of settlement agreement

terms between appellants and defendant-appellee, Meredith Schafer, Administrator of the

Estate of Guy Eugene Bailey(hereafter, "appellee").  Bailey was the now-deceased

tortfeasor.  For the reasons set forth below, this court affirms the trial court's judgments.

## I .Background

{¶ 2} The lengthy background to this appeal from a 2016 car accident has been

recited by this court in two prior decisions and will not be repeated here.  *Moton v.*

*Bailey*, 6th Dist. Lucas No. L-18-1246 (Feb. 21, 2019) and *Moton v. Bailey*, 6th Dist.

Lucas No. L-19-1122, 2019-Ohio-5365, ¶ 2-16.

{¶ 3} Relevant to this appeal are the following subsequent facts.  Upon reversal

and remand from this court for the parties to either "agree to the terms of the settlement"

or, if no agreement, to encourage the trial court to "conduct a hearing to determine the

---

[1] The first complaint, case No. CI2017-04763, contained eight causes of action by four plaintiffs-nonappellants against appellee and Bennett's insurer, a defendant-nonappellee. The second complaint, case No. CI2018-01664, contained 11 causes of action by appellants against appellee, SafeAuto, and four other defendants-nonappellees. On March 15, 2018, the trial court sua sponte ordered the consolidation of the second complaint into the first, since they arose from the same 2016 car accident, and the litigation continued.

2.

precise terms of settlement agreement and render judgment accordingly," *Id.* at ¶ 28, on September 30, 2021, the trial court held an evidentiary hearing. The trial court heard testimony from three witnesses and admitted 33 exhibits into evidence.

{¶ 4} During the hearing, the court posed the following questions to the parties:

Court: So if I'm correct, the bone of contention, quote/unquote, if you will, now, is the interest due, if any, from the time of the settlement, plus any costs. Is that correct, [appellants' counsel]? Is that, basically, why we're here?

Appellants' Counsel: Basically. I mean, there's still the appeal issue on the three causes of action which, obviously, my clients don't want to release, and they would have to with the release that they have.

Court: I assume if you settled this case it would settle the case and all causes of action would be dismissed, correct?

Appellants' Counsel: If it was settled. * * * And the only reason we filed this suit is because they did not follow * * * our settlement terms, they just ignored them. Then I sent an email saying, hey, what's going on? * * * Gave them extra time, they ignored that. I filed suit. The day I filed suit, on March 5th, that afternoon after I filed suit, is when she sent me the release and said she had the check. It still was only in Cynthia Bennett's name.

3.

Court: I understand, but I'm trying to distill it down to why we're here. We are here because of the interest and the court costs, right?

Appellants' Counsel: Primarily.

* * *

Court: I take it the issue today is the fact that this case is not settled today. Is that the fault of the Defendant or the Plaintiff? That's why we're here, right? So I assume. Do you want to present evidence to show that, basically, it's not my fault, and [appellants' counsel] will present evidence to show that, basically, it's not my fault, and then we'll go from there, if you wish.

Appellee's Counsel: That's fine, yes.

{¶ 5} The trial court inquired specifically about the release document and why appellants refuse to execute it contemporaneously with the $25,000 payment.

Court: The check from SafeAuto dated May 30th, 2018 has both [appellants'] names. Was a release proffered with both names? I understand from the testimony that it was, correct?

Appellants' Counsel: Yes, it was.

Appellee's Counsel: Yes, it was, Your Honor.

Court: So May 30th, 2018, that was still not acceptable?

Appellants' Counsel: We had already filed suit. * * * And * * * they refused to pay the court costs, they refused to pay even a couple months interest, which wouldn't have been much. * * * Which we're entitled to. If there was a settlement, we were entitled to interest from that date forward.

Court: Okay, let's back up a minute. * * * So what you're saying is that by May 30th, 2018 you had already filed the lawsuit, so you wanted more than the 25,000? * * * Did you ever communicate about [how much more you wanted] to them?

Appellants' Counsel: No, Your Honor. We communicated about the interest and about the court costs, which they just flat out refused. They said, this is the release, take it or leave it.

Court: Well, that's why I'm asking. Is there any email or communication to SafeAuto with an increased demand for the interest and the court costs to be paid also? * * * Did you ever communicate to the other side how much you wanted for interest and costs?

Appellants' Counsel: It would have been statutory interest, Your Honor. And you can't get more than statutory interest. It's a number, they knew what it was, just like I did. You multiply it by the amount and that's it.

{¶ 6} Again, appellants' counsel testified at the evidentiary hearing that the problem with appellee's release document was the absence of interest and court costs: "I

knew the limits were 25. I knew they couldn't get any more than 25, but they could give me 25 with interest and costs because the policy says they'll pay interest and costs."

{¶ 7} On October 12, 2021, the trial court journalized its decision finding the existence of a settlement agreement between appellants and appellee. The terms of the settlement agreement were negotiated by the parties' representatives as follows:

In a written letter dated November 14, 2017, plaintiffs' counsel made a demand from SafeAuto Insurance Company ("SafeAuto") for the policy limits of $25,000.00 to settle the claims of Cynthia Bennett against Safe Auto's insured. On January 2, 2018, Angela Fox, Esq. ("Ms. Fox"), Claims Counsel Manager for SafeAuto, sent an email to plaintiffs' counsel which extended an offer of the $25,000.00 policy limits for Cynthia Bennett's claim which would include a full and final release including a waiver of subrogation for lienholders Grange Indemnity ("Grange"), The Rawlings Co. ("Rawlings"), and Praxis Disability Group. Later that day, plaintiffs' counsel sent an email to Mike Paszkiewicz, a representative from Grange, which stated that SafeAuto had made a policy limits offer of $25,000.00 and that the offer had been accepted and requested that SafeAuto be notified that Grange would not be looking for subrogation. On January 29, 2018, plaintiffs' counsel sent an email to Ms. Fox with the approval from Praxis to release the settlement funds to plaintiffs. In another

6.

email dated February 2, 2018, plaintiffs' counsel let Ms. Fox know that Mary Emily Royce from Rawlings told him that it was ok to release the settlement funds and therefore, since everything was taken care of, plaintiffs' counsel requested that Ms. Fox send the settlement, release and check to him. On February 7, 2018, an email was sent by Ms. Fox to plaintiffs' counsel which confirmed that Rawlings had approved the payment of the settlement funds and that all lienholders have consented for the settlement funds to be dispersed.

In consideration of the evidence submitted, it is apparent that the parties had a settlement agreement in this case prior to the filing of Cynthia Bennett's Complaint on March 5, 2018. The terms of that settlement are for payment of the policy limits of $25,000.00 from defendant to plaintiffs in exchange for the execution of a release. Therefore, this Court Orders the parties in this action to complete the settlement with plaintiffs executing the release previously provided by defendant and defendant tendering a check to plaintiffs in the amount of $25,000.00 made payable to Star Moton, Cynthia Bennett, and their counsel Patrick Millican.

Additionally, when questioned by the Court at the beginning of the evidentiary hearing as to what is left to complete the settlement in this

matter, plaintiffs' counsel stated that the only issues remaining are interest and court costs.

{¶ 8} The trial court then ordered the defendant-appellee to pay post-judgment interest pursuant to R.C. 1343.03(B), "the post-judgment interest on the settlement in this matter shall be calculated from the file-stamped date of this order until the monies are paid," and ordered "defendant to pay all remaining court costs in this case" pursuant to "customary practice in civil actions such as this case." On October 18, 2021, appellee filed a notice of compliance[2] with the trial court's journalized order and filed a proposed stipulation of settlement with that notice. Also on October 18, the clerk of court's entry in the docket states the cost bill was mailed to appellee, but a copy of that cost bill is not in the record before us.

{¶ 9} Appellants did not respond to the notice or proposed stipulation, but timely appealed and set forth eight assignments of error.

1. The trial court erred in ordering the dismissal of the Plaintiff's Sixth, Seventh, and Eighth causes of action and ordering the Clerk to redact and seal the Plaintiff's Complaint.

2. The trial court erred in not determining the precise terms of the settlement.

---

[2] Appellee's notice of compliance contains a copy of the check tendering payment for the $25,000 settlement amount, a calculation for the postjudgment statutory interest owed to appellants, and a copy of the check tendering payment for the postjudgment interest.

8.

3. The trial court erred in failing to award interest from the date of settlement.

4. The trial court erred in ordering Plaintiffs to settle with a non party to this case, SafeAuto.

5. The trial court's Order is ambiguous, conflicting and unenforceable.

6. The trial court erred in ordering the Plaintiffs to execute the release previously provided by Defendant.

7. The trial court erred in granting the Defendant's Amended Motion to Enforce Settlement.

8. The trial court erred in dismissing the case with prejudice.

## II. Motion to Dismiss

{¶ 10} In support of their first assignment of error, appellants argue that the trial court erred twice. The first error was when the trial court dismissed and redacted from the consolidated complaint their three causes of action against SafeAuto for breach of contract, negligent misrepresentation, and fraudulent misrepresentation. The second error was when the trial court ordered the clerk of courts to redact and seal the three causes of action from the second complaint, which had been consolidated into the first complaint. Relying on *Tejada-Hercules v. State Auto. Ins. Co.*, 10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, appellants argue there was a valid, enforceable settlement agreement

between appellants and SafeAuto, and their three causes of action should have prevailed over SafeAuto's Civ.R. 12(B)(6) motion to dismiss.  We are not persuaded.

{¶ 11} SafeAuto's Civ.R. 12(B)(6) motion argued that as a matter of law, pursuant to R.C. 3929.06, *Peyko v. Frederick*, 25 Ohio St.3d 164, 495 N.E.2d 918 (1986), and *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 299 N.E.2d 295 (8th Dist.1973), appellants cannot maintain a prejudgment direct action against an alleged tortfeasor's liability insurer.  Over appellants' objection, the trial court granted SafeAuto's Civ.R. 12(B)(6) motion.  We review de novo a trial court's decision on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted by accepting as true all factual allegations in the complaint.  *Alford v. Collins-McGregor Operating Co.*, 152 Ohio St.3d 303, 2018-Ohio-8, 95 N.E.3d 382, ¶ 10.  However, we are unable to reach the merits of appellants' first assignment of error because their claims are barred by the doctrine of res judicata.  *State ex rel. Kerr v. Pollex*, 159 Ohio St.3d 317, 2020-Ohio-411, 150 N.E.3d 907, ¶ 9.

{¶ 12} "The doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it."  *Natl. Amusements, Inc. v. City of Springdale*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990).  Appellants failed to raise in their prior appeal before this court the trial court's two journalized entries now appealed.  *Moton*, 6th Dist. Lucas No. L-19-1122, 2019-Ohio-5365, at ¶ 17.

10.

The judgment to which appellants previously appealed was a final order. *Id.* at ¶ 21.[3] The Ohio Supreme Court holds that a final judgment between litigating parties is conclusive as to all claims which were, or might have been, litigated in a first lawsuit. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995), citing *Natl. Amusements* at 62. We do not find in this matter any recognized exceptions to the res judicata doctrine. *Natl. Amusements* at 62-63.

{¶ 13} Appellants' first assignment of error is not well-taken.

### III. Settlement Agreement

{¶ 14} Appellants change their position between their first assignment of error and the remaining assignments of error from affirming the existence of a prelitigation settlement agreement with SafeAuto to arguing they "have never agreed to the terms contained in the release and settlement agreement that the Defendant has continually insisted they sign to settle this matter." Appellants' second through eighth assignments of error challenge different aspects of the settlement agreement terms determined by the trial court by its October 12, 2021 journalized entry. We will address those assignments of error together.

### A. Existence of Settlement Agreement

---

[3] During the evidentiary hearing held on September 30, 2021, appellants' counsel called the two dismissal judgments "12(B)(6) on felonies" and simply concluded they "can't be appealed until this case is finally over."

{¶ 15} The law "highly favors settlement agreements," which are binding contracts designed to terminate one or more claims by preventing or ending litigation. *Infinite Sec. Sols., L.L.C. v. Karam Properties, II, Ltd.*, 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, ¶ 13. "If there is uncertainty as to the terms of the settlement agreement, the court should hold a hearing to determine whether an enforceable agreement exists." *Id.* at ¶ 31, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 17; *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337 (1997), syllabus ("Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment."). The record confirms the trial court held an evidentiary hearing on September 30, 2021.

{¶ 16} It is a question of law for the trial court to determine the existence of a settlement agreement, which we review de novo on appeal. *Aceste v. Stryker Corp.*, 6th Dist. Lucas No. L-19-1166, 2020-Ohio-4938, ¶ 47. "Absent a specific statutory or common-law prohibition, parties are free to agree to the contract's terms." *Snyder v. Am. Family Ins. Co.*, 114 Ohio St.3d 239, 2007-Ohio-4004, 871 N.E.2d 574, ¶ 24. Not even a party's subsequent change of heart or regret for not achieving their ideal settlement terms constitutes grounds to set aside the settlement agreement. *Feathers v. Tasker*, 9th Dist. Summit No. 26318, 2012-Ohio-4917, ¶ 11-12.

**B. Essential Terms of Settlement Agreement**

12.

{¶ 17} To determine the existence of a settlement agreement, we must find with reasonable certainty and clarity a meeting of the minds as to the following essential elements of a contract: offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and of consideration. *Kostelnik* at ¶ 16-17.

{¶ 18} Upon de novo review of the record, we find with reasonable certainty and clarity a meeting of the minds of the essential terms of the settlement as follows: (1) a $25,000.00 offer to appellants from the tortfeasor appellee, made through his liability insurer SafeAuto, upon a "full and final release" of appellants' claims arising from the 2016 accident caused by appellee, including waivers of subrogation for three lienholders, (2) acceptance of the offer by appellants through their attorney, (3) the contractual capacity by the parties' authorized representatives and their respective attorneys, (4) consideration in the form of a "full and final release" by appellants for the $25,000 payment to them, (5) the manifestation of mutual assent between the parties and by their representatives, including that by February 7, 2018, all three lienholders consented for the settlement funds to be dispersed to appellants, and (6) the legality of object of the settlement agreement and of consideration to resolve all appellants' claims arising from the 2016 accident caused by appellee.

{¶ 19} Appellants argue no enforceable settlement agreement exists with appellee because four "essential" terms are missing: (1) "the precise date of the settlement

13.

agreement," (2) "the names to be on the settlement check and release," (3) "when funds and release were to be provided to plaintiffs' counsel," and (4) "the terms of the release (including costs, interest of any type, and the release of SafeAuto who was dismissed at the time of the ORDER)." (Emphasis sic.) We disagree, as further discussed below.

{¶ 20} Appellants' self-labeling of disputed terms as "essential" does not automatically defeat the existence of the settlement agreement. *Schafer v. Soderberg & Schafer*, 196 Ohio App.3d 458, 2011-Ohio-4687, 964 N.E.2d 24, ¶ 73 (6th Dist.). Put another way, not every disputed term raised by a party to a settlement discussion is an "essential" term impeding the existence of a settlement agreement. *Erie Capital, LLC v. Barber*, 6th Dist. Erie No. E-20-010, 2021-Ohio-2258, ¶ 20. In light of all the circumstances, it is a question of fact for a fact finder to determine the intent of the parties for the terms of their agreement without making the contract for the parties. *Schafer* at ¶ 74. Where, as here, the parties have assented to the essential terms of a settlement, the trial court has the authority to sign a journal entry reflecting the existence of a settlement agreement and to enforce that agreement, which the parties may not thereafter repudiate. *Feathers*, 9th Dist. Summit No. 26318, 2012-Ohio-4917, at ¶ 7. As a reviewing court, we will not substitute our judgment for that of the trial court "where the record contains competent and credible evidence supporting the findings of fact and conclusions of law rendered by a trial court judge." *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 406, 659 N.E.2d 781 (1996).

14.

## C. Terms of Release Document

**{¶ 21}** Appellants dispute that the language in the release has been resolved between the parties.[4] A release is a contract between parties where at least one party to the contract relinquishes at least one claim or cause of action against another party to the contract. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 55. One of the essential settlement terms in this matter is for appellants to sign "a full and final release" which will bring finality to appellants' claims. Appellants argue the trial court erred when the October 12 order concludes with, "This case shall be dismissed with prejudice." Appellants' agreement to execute "a full and final" release makes dismissal with prejudice appropriate. "A release is an absolute bar to a later action on any claim encompassed within it, absent a showing of fraud, duress, or other wrongful conduct in procuring it." *Id.* at ¶ 48. There is no such showing in this case.

**{¶ 22}** Appellants also argue the integration clause of the release "nullifies" the trial court's order, even though the trial court ordered them to sign it. Relying on *Layne v. Progressive Preferred Ins. Co.*, 104 Ohio St.3d 509, 2004-Ohio-6597, 820 N.E.2d 867, they argue the trial court's order is ambiguous, conflicting and unenforceable on the

---

[4] The trial court's seventh footnote of the order states, "Plaintiffs' counsel also indicated during the hearing that any issues regarding the language in the release have been resolved."

15.

issues of costs, interest, and SafeAuto liability. We disagree. *Layne* is distinguishable from this case because it analyzed R.C. 1343.03(A) interest on a settlement agreement signed prior to presentment to the trial court. *Id.* at ¶ 1-3. *Layne* is further distinguishable for holding that if the parties originally negotiated a specific settlement date or a due and payable date, *Id.* at ¶ 13, which is modified by a subsequent, signed settlement agreement with an integration clause, then parol evidence of antecedent understandings will not be admitted to contradict the signed writing. *Id.* at ¶ 11. Those factors are not present in this case. In addition, the plain language of the integration clause of the release document in the record covers other "promises," "inducements," or "agreements," the plain language of which excludes the trial court's journalized order. *See Try Hours, Inc. v. Douville*, 2013-Ohio-53, 985 N.E.2d 955, ¶ 16 (6th Dist.); *see also Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶ 8.

### D. Other Terms

{¶ 23} Under the rules of contract interpretation, where the essential terms are not ambiguous, any ambiguity of the parties' intent regarding nonessential or incidental terms are questions properly determined by the trier of fact. *Savoy Hosp., L.L.C. v. 5839 Monroe St. Assocs., L.L.C.*, 6th Dist. Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 31.

{¶ 24} Appellants argue "the precise date of the settlement agreement" is unclear because the trial court found, "In consideration of the evidence submitted, it is apparent

16.

that the parties had a settlement agreement in this case prior to the filing of Cynthia Bennett's Complaint on March 5, 2018." We disagree. The trial court clearly stated at the evidentiary hearing, "[T]he issue today is the fact that this case is not settled today." Contrary to appellants' position, the parties did not negotiate and agree upon incorporating into a written agreement the dates of settlement and the due and payable date. *Bellman* at ¶ 9. Generally, a date is not a per se essential term required to validate a contract. *See Park v. Acierno*, 160 Ohio App.3d 117, 2005-Ohio-1332, 826 N.E.2d 324, ¶ 45 (7th Dist.) (evaluating a land purchase agreement). Nevertheless, the date of the trial court's journalized entry, October 12, 2021, is clearly found in the record, and on that date the trial court determined the existence of the settlement's essential terms. *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, 872 N.E.2d 1214, ¶ 30 (order on settlement agreement has legal force and effect only upon court's journalized entry). "A court speaks through its journal entry, and a judgment is not rendered until it is reduced to a written journal entry and filed with the clerk for journalization." *State ex rel. Schmidt v. Schmidt*, 186 Ohio App.3d 307, 2010-Ohio-296, 927 N.E.2d 1132, ¶ 10 (6th Dist.).

{¶ 25} Appellants also argue there is no settlement agreement because the trial court failed to determine "the names to be on the settlement check and release." We disagree. The trial court's journalized order clearly identifies the settlement funds be "made payable to Star Moton, Cynthia Bennett, and their counsel Patrick Millican."

17.

Appellants' counsel confirmed at the evidentiary hearing that the payee names on the May 30, 2018 settlement check were the correct three people. The journalized order also clearly identifies that plaintiffs, Cynthia Bennet and Star Moton, are to "complete the settlement with plaintiffs executing the release previously provided by defendant." Appellants' reliance on *Tejada-Hercules* is, again, misplaced because they erroneously assume SafeAuto breached a settlement agreement with them.[5] No breach of contract cause of action by appellants against SafeAuto has existed since the trial court's 2018 dismissal entries, and the October 12, 2021 journalized entry contains no finding of a breach of contract by SafeAuto.

{¶ 26} Appellants also argue there is no settlement agreement because there is no date for when the settlement funds and associated release were to be provided to appellants' counsel. We disagree. "[I]f the agreement does not contain a date as to when payment is to be made or performance is to be rendered, a reasonable time can be imposed." *Park v. Acierno*, 160 Ohio App.3d 117, 2005-Ohio-1332, 826 N.E.2d 324, ¶ 45 (7th Dist.). "When the performance period of a contract is undefined, the law implies a term assuming that the parties intended that performance take place within a reasonable time." *First Fed. Bank of the Midwest v. Laskey*, 6th Dist. Wood No. WD-10-028, 2011-Ohio-1395, ¶ 22. We find the trial court's journalized order imposes on the parties a

---

[5] This court recognizes *Tejada-Hercules,* 10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, at ¶ 10 with respect to its determination on attorney's fees that is based on a trial court's breach of settlement agreement determination. *Savoy Hosp.* at ¶ 69; *Raymond J. Schaefer, Inc. v. Pytlik*, 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶¶ 33-34.

18.

reasonable timeframe for performance to complete the settlement: (1) for appellants to sign "the release previously provided by defendant," and (2) for "defendant tendering a check to plaintiffs in the amount of $25,000.00 made payable to Star Moton, Cynthia Bennet, and their counsel Patrick Millican."

{¶ 27} Appellants also argue there is no settlement agreement because the release does not shield appellants from paying court costs, and the trial court lacked authority to waive appellate court costs owed to appellants. We disagree. Costs are not an essential term of a settlement agreement. *Wagner v. Boggess Coal & Supply Co.*, 94 N.E.2d 64, 66 (2d Dist.1950) (a court will not retain jurisdiction merely to determine incidental questions such as costs.). Moreover, costs are subject to a court's discretion to determine. *Vossman v. AirNet Sys., Inc.*, 159 Ohio St.3d 529, 2020-Ohio-872, 152 N.E.3d 232, ¶ 6, citing Civ.R. 54(D). Here, the trial court clearly ordered appellee, not appellants, pay the court costs,[6] which is paid to the court, not appellants. *In re Buffington*, 89 Ohio App.3d 814, 816, 627 N.E.2d 1013 (6th Dist.1993). As for appellate court costs, this court's decision did not order appellants to pay App.R. 24 costs. *Moton*, 6th Dist. Lucas No. L-19-1122, 2019-Ohio-5365, at ¶ 28. To the extent that appellants seek attorney's fees as part of the costs of this litigation, they are not entitled to them. "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil

---

[6] The record contains information the cost bill was issued by the court to appellee.

action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7.

**{¶ 28}** Appellants erroneously rely on *Hartmann v. Duffey*, 95 Ohio St.3d 456, 2002-Ohio-2486, 768 N.E.2d 1170, syllabus, to argue that without a clear settlement date, the additional interest they desire under R.C. 1343.03(A) cannot be calculated. Here, the settlement agreement was reduced to judgment, distinguishing it from *Hartman*. *Id.*; *Zimmerman v. Bowe*, 6th Dist. Lucas No. L-18-1200, 2019-Ohio-2656, ¶ 31 (*Hartman* holds that interest is computed from the date of the judgment, decree or order under R.C. 1343.03(B)). In fact, appellants vigorously maintained during the evidentiary hearing there was never a settlement agreement with appellee because, although they failed to make an increased settlement demand for interest and court costs, their demands were implied: "No, * * * I don't believe I ever made an increased demand. * * * I don't recall making one. I recall continually getting the same release and saying, we can't sign it the way it is, and they just kept sending the same one back." When the trial court then asked, "And what was wrong with the release?" appellants' counsel responded, "It didn't include interest and * * * said [Bennet] had to pay all her own court costs." The issue of statutory interest on settlement was left to the trial court to determine, and it did. The trial court's October 12 journalized decision determined the applicable statutory interest pursuant to R.C. 1343.03(B).

20.

**{¶ 29}** Appellants also argue that because SafeAuto was a non-party defendant at the time of the trial court's order, SafeAuto could not be included in the release ordered by the trial court. We disagree. The 2018 dismissal of three causes of action against SafeAuto did not affect the existence of the essential terms of a settlement agreement between appellants and appellee, one of which is a "full and final" release by appellants. "A release which is unqualified and absolute in its terms releasing the original tortfeasor raises the presumption that the injury of the releasor has been fully satisfied, and that the release was executed for the benefit of all who might be liable for those injuries." *Smith v. Buckeye Union Ins. Co.*, 6th Dist. Erie No. E-80-22, 1980 WL 351507, *3 (Sept. 5, 1980), citing *Whitt v. Hutchison*, 43 Ohio St.2d 53, 61, 330 N.E.2d 678 (1975) (An unconditional "release is presumed in law to be a release for the benefit of all the wrongdoers who might also be liable, and to be a satisfaction of the injury."). Therefore, the "full and final" release appellants agreed to execute includes the universe of all persons, including nonparties, who may be liable for appellants' injuries arising from the 2016 car accident. More specifically, to the extent that appellants refuse to release SafeAuto in hopes of reviving their dismissed causes of action, we previously determined they are barred from further litigation on that issue.

**{¶ 30}** We find, upon de novo review, the record contains competent and credible evidence supporting the trial court's findings of fact and conclusions of law, after holding

21.

an evidentiary hearing, that, with reasonable certainty and clarity, a meeting of the minds exists between the parties as to the essential terms of a settlement agreement.

{¶ 31} Appellants' second, third fourth, fifth, sixth, seventh and eighth assignments of error are not well-taken.

### III. Conclusion

{¶ 32} On consideration whereof, the judgments of the Lucas County Court of Common Pleas are affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.       _____
                                             JUDGE
Gene A. Zmuda, J.      
CONCUR.                         _____
                                             JUDGE

Christine E. Mayle, J.      _____
CONCURS AND WRITES                       JUDGE
SEPARATELY.

**MAYLE, J.**

{¶ 33} I write separately because the majority opinion could be read to imply that an oral agreement to provide a "full and final release" as a condition of settlement— without more—is necessarily an agreement to release "the universe of all persons, including nonparties, who may be liable for appellants' injuries." Of course, parties may agree to enter into a settlement agreement that includes unqualified and absolute release language, as the parties did in *Smith v. Buckeye Union Ins. Co,* 6th Dist. Erie NO. E-80-22, 1980 WL 351507 (Sept. 5, 1980), the case cited by the majority.[7] But, the mere use

---

[7] The written release in *Smith* was labeled "FULL AND FINAL RELEASE" and contained the following language:

> For the sole consideration of Fifteen Thousand and no/100 to us in hand paid by Harry S. Morrow, Patricia Morrow and Ronald Morrow, receipt of which is hereby acknowledge I/we, being of legal age, do for ourselves and our executors, administrators, successors, and assigns hereby release and discharge Harry S. Morrow, Patricia Morrow and Ronald Morrow together with all other persons, firms, and corporations from any and all claims, demands and actions which I/we now have or may have arising out of any and all personal injuries, damages, expenses, and any loss or damage resulting or to result from an accident occurring on or about the 2nd day of September, 1977, or near Perkins Avenue, Campbell Street, Sandusky, Ohio, Erie County, Ohio, it is further understood that the injuries and damages and the legal liability therefor are disputed and denied, and that this release is to compromise and terminate all claims for both known and unknown injuries and damages of whatever nature, including all future developments thereof, in any way growing out of or connected with or which may hereafter in any way grow out of or be connected with said accident, and that all agreements and understandings between the parties in reference thereto are embodied herein.

23.

of the phrase "full and final release" when negotiating a settlement agreement does not *necessarily* refer to such a broadly-worded release.

{¶ 34} Here, appellants do not take issue with the broad language of the releasing clause of the written agreement that the court ordered them to sign. Rather, appellants argue that "Safe Auto is not a party to this action" and the trial court therefore "exceeded its jurisdiction in ordering Bennett and Moton to sign a release that releases Safe Auto." I would note two things.

{¶ 35} First, there there is no authority to suggest that a trial court somehow "exceeds its jurisdiction" by enforcing a settlement agreement that includes the release of claims against nonparties. Second, to the extent that appellants are really arguing that they never agreed to release Safe Auto, that issue is moot. As the majority recognizes, appellants are barred by res judicata from asserting any claims against Safe Auto that relate to the accident at issue in this case.

{¶ 36} With these clarifications, I concur in judgment.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

*Id.* at *1. We concluded that the language of this release was "unqualified and absolute in its terms" and "raise[d] the presumption that the injury of the releaser has been fully satisfied, and that the release was executed for the benefit of all who might be liable for those injuries." *Id.* at *3.

25.